MR. JUSTICE HARRISON
dissenting:
For purposes of this dissent, Twill discuss the issues in the order presented by appellant.
I do not quarrel with plaintiff’s assertion that, under Montana law, all persons have the right to refuse to participate in a sterilization because of religious beliefs or moral convictions. However, section 69-5223(2) and (3), R.C.M.1947, now section 50-5-504 and -505 MCA, is invokable only if one’s refusal to participate is, in the statutory language, “because of religious beliefs or moral convictions.” Here, there are a number of inconsistencies in plaintiff’s position.
While it is true that one need not hold religious beliefs or moral convictions for a specified period of time before enjoying the protection of the statute, in these circumstances reliance on the statute strikes a discordant note. For the six years prior to her termination, plaintiff participated in 20 sterilizations without objection, including six such operations in the year prior to these events. Also, being greatly upset, as plaintiff testified she was by the August 19 operation, is a physical and emotional reaction, but not a religious belief or a moral conviction. Assuming arguendo, that a plaintiff’s refusal to participate is grounded in religious beliefs or moral convictions, plaintiff testified at the hearing so as to belie that assumption. She testified that she does not have any objection to administering anesthesia for an ordinary D&C.
*432 This merits some elaboration in light of plaintiff’s attempt to discount her own testimony in this regard. Her testimony was that she would have no objection to administering anesthesia for an ordinary D&C. In her reply brief, she accuses respondent of “misunderstanding” the nature and uses of a D&C and states that the use of a D&C for a therapeutic abortion is “relatively minor” compared to other ordinary uses of D&C.
Respondent hospital asserts that a D&C, as performed at that hospital, is a therapeutic abortion. Plaintiff had given the anesthetic in other D&C’s which apparently were therapeutic abortions and which she, as a medical practitioner, understood to be just that.
Plaintiff testified she would not object to giving the anesthetic for an ordinary D&C, which certainly may be therapeutic abortion. If she were upset by the D&C, then her refusal to participate in any more D&C’s would be understandable; but that apparently is not her position.
Another baffling inconsistency is plaintiff’s refusal to participate in one surgical procedure, sterilization, based on experience with a totally different surgical procedure, dilation and curettage. It would be logically consistent for plaintiff to refuse to participate in other D&C’s, but her refusal to participate in a totally different surgical procedure makes as much sense as saying, “Because I had a bad experience with a tonsilectomy, I will not do any more appendectomies.”
Plaintiff responds that one need not hold his beliefs or convictions for a particular period of time before realizing the protection of the statute, and that one need not be aware of the existence of the statute to enjoy its protection. Both contentions are true, but they do not meet the prior problem — was she relying on the statute at the time of these events, or is the reliance an after-the-fact means to getting reinstated?
Plaintiff’s second argument is improperly advanced. Respondent does not contest the constitutionality of the statute in question, and the issue was not properly preserved in the lower court proceedings.
*433 To deal with the third and fourth arguments, a recitation of certain of the testimony presented during the hearing is necessary. The District Court determined that “Plaintiff had been an employee of questionable value to Defendant”, offering the following reasons in support of its conclusion. Reference was made to an incident during which plaintiff, who negotiated her own salary with the hospital administrator, would not talk with him for “some period of time” (actually, one day) after being refused the substantial raise she had requested. In another episode, plaintiff questioned a delivery made by the hospital laboratory personnel. In that incident, plaintiff became embroiled in an argument with one of the lab personnel. Another incident to which the District Court alludes is that in which plaintiff refused to administer anestheics for a tonsilectomy when the patient had an elevated temperature. Plaintiff registered her complaint with Wigart, the hospital administrator, who concurred in her decision, testifying that “in that particular instance the safest approach was the best.”
The District Court also found that “it was constantly necessary for the administrator to assure Plaintiff she, indeed, was a ‘team member’ capable of holding up her end of the hospital work.” The testimony on this point is conflicting. Plaintiff testified that the hospital administrator told her she was doing a good job and that she was a good team member, particularly during the three months before her termination. The hospital administrator corroborated that testimony. His version, however, included an explanation that he did so to give positive reinforcement to the plaintiff, whom he believed was not working as well as he said she was. His explanation was to the effect that he was using “this team concept positive enforcement with her to overcome [certain] difficulties” she was having at the hospital. He acknowledges that he told plaintiff a number of times that she was a good employee and a good team member and does not claim that he offered criticism of her work in conjunction with the praise. It seems fair, therefore, that she could take that praise at face value. After the fact, however, Wigart in effect claims that he was just saying that to encourage plaintiff’s per *434 formance to come in line with the praise which she was given, apparently prematurely.
As part of the rationale for the same finding of fact, the District Court determined that “the difficulties of Plaintiff’s relationship with Defendant can be characterized as making excessive demands, difficulties with other employees, failure to recognize authority, refusal to stay with patients recovering from anesthesia and maintaining outdated drugs.” Making excessive demands refers to the incident in which plaintiff requested an inordinately high pay raise. Difficulties with other employees apparently refers to her refusal to administer an anesthetic in the tonsilectomy referred to above and in another operation in which the patient had a slow pulse. The failure to recognize authority seemingly refers to the incident in which the laboratory did not deliver the blood which the doctor had ordered. A refusal to stay with patients recovering from anesthesia refers apparently to plainiff’s questioning of the hospital procedure whereby one other than a qualified medical practitioner, a registered nurse, for example, would stay with patients recovering from surgery. The reference to maintaining out-dated drugs is puzzling, as the record is devoid of any reference to this.
The District Court determined that plaintiff’s refusal to participate in the sterilization scheduled for August 23, 1977, described by Wigart as “the straw that broke the camel’s back,” was “only the last of many problems involving Plaintiff, and while it was the incident which gave rise to this controversy, it was not the primary moving cause of discharge.” This finding invites discussion of the legal principles articulated by the United States Supreme Court in Mt. Healthy City Board of Ed. v. Doyle (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471.
Although Mt. Healthy involved a controversy surrounding the refusal to rehire an untenured teacher, the test articulated there is applicable to the instant case. The test is designed to be applied in those circumstances in which an employee, who has not been rehired or in practical effect discharged, claims that his discharge *435 was unlawful because the conduct which precipitated it was constitutionally protected. The issue on which the Court focused is whether, even if it were the case that the employer legally could have dismissed the employee had the one precipitating incident never come to its attention, “the fact that the protected conduct played a ‘substantial part’ in the actual decision [to terminate] would necessarily amount to a constitutional violation justifying remedial action.” 429 U.S. at 285, 97 S.Ct. at 575. The Court concluded that it would not. The rationale was:
“A rule of causation which focuses solely on whether protected conduct played a part, ‘substantial’ or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct that he would have occupied had he done nothing ... A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.” 429 U.S. at 285-86, 97 S.Ct. at 575.
After announcing in passing that an employer would not be precluded from attempting to prove that quite apart from the protected conduct, the employee’s record was such that he would not have been rehired in any event, 429 U.S. at 286, 97 S.Ct. 568, the Court announced a test, “one which likewise protects against the invasion of constitutional rights without commanding undesirable consequences not necessary to the assurance of those rights.” 429 U.S. at 287, 97 S.Ct. at 576. The burden initially is placed upon the complaining employee to show that his conduct was protected and that the conduct was a “substantial factor,” or a “motivating factor,” in the decision to terminate his employment. Once the employee carries this burden, however, it is incumbent upon the employer to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. 429 U.S. at 287, 97 S.Ct. 568.
*436 It appears, then, that if a plaintiff fails to prove both that his conduct was constitutionally (or as in this case, statutorily) protected and that such conduct was a motivating factor in the decision not to rehire (or as in this case, to terminate) the inquiry is then ended. The burden would not shift, because it would not have been carried by the plaintiff in the first instance. Therefore, the first determination must be whether plaintiff’s refusal to participate in the sterilization was in fact statutorily protected.
The second half of plaintiff’s burden has been carried. It is clear by the admission of the hospital administrator himself that the refusal was a motivating factor in the decision to terminate plaintiff. Note, however, it was not the refusal per se which was as troublesome as the timing of the refusal. Plaintiff allowed less than 24 hours “lead time” for the hospital administrator to find an anesthetist who could substitute for her. That task was no easy one, given the geographical isolation and paucity of qualified practitioners in the Libby area. Because of fortunate circumstances, the operation did go ahead as scheduled, but that appeared to be a matter of sheer dumb-and-blind luck, rather than what reasonably could have been expected.
To return to that initial inquiry: did plaintiff prove that her conduct was constitutionally protected? Here again we must examine the inconsistencies in the plaintiff’s position. She had participated in 20 sterilizations in six years prior to her termination; six of those operations were performed within the last year of her tenure. Being greatly upset, as plaintiff assuredly was, is, as respondent characterized it, a physical and emotional reaction, but is not a religious belief or moral conviction. One might reasonably argue that the reaction would not have been forthcoming had it not been for a religious belief or moral conviction held by plaintiff, for however short a time. However, there is plaintiff’s testimony during the hearing that she would participate in ordinary D&C’s, even though the operation which caused her stress was itself a D&C. There is also the logical leap which one must make in correlating a refusal to assist in a sterilization to an upsetting experience in a totally dif *437 ferent surgical procedure, the therapeutic D&C. It is true that the District Court made no specific finding as to whether plaintiff’s conduct was statutorily protected, but a fair inference from the findings as a whole and the conclusions drawn therefrom is that the court found it was not.
If it may be inferred that the District Court found plaintiff’s conduct was not statutorily protected, then the determinations made with respect to the other reasons for plaintiff’s termination are unnecessary and irrelevant, as plaintiff contends. But given that the employer has the right to put on proof demonstrating that the plaintiff was terminated for permissible reasons, then findings with respect to that evidence are appropriately made.
The other justifications for plaintiff’s termination advanced by Wigart are somewhat tinny; they do not ring true. The reason which appears soundest is the one involved in this controversy— plaintiff’s announcement of her intention not to participate within 24 hours of the scheduled operation. There is no doubt this was disruptive. The patient had been “prepped” and was physically and emotionally ready for the operation. Had plaintiff made her objections known on the 19th of August, giving the hospital administrator a longer and more reasonable period of time in which to secure a substitute, it would be an easy matter to conclude that her termination was unlawful. Given that she waited until the proverbial eleventh hour to announce her intention not to participate, however, goes to strengthening respondent’s case.
This, then, is that on which the decision turns. The District Court, with its superior advantage to observe the demeanor of the witnesses, concluded that the hospital had ample justification independent of this particular event for terminating plaintiff’s employment. It implicitly found that plaintiff’s conduct was not statutorily protected. It is axiomatic that, where there is a conflict in the evidence, this Court will defer to the findings of the trial court, which are presumed to be correct if supported by substantial credible evidence. In a nonjury trial, the findings of the District Court will not be reversed on appeal, unless there is a clear pre *438 ponderance of evidence against those findings. See, e. g., Montana Farm Service Co. v. Marquart (1978), 176 Mont. 357, 578 P.2d 315, and cases cited therein.
This Court may consider only whether substantial credible evidence supports the findings of fact and conclusions of law made by the District Court. See, e. g., Kartes v. Kartes (1977), 175 Mont. 210, 573 P.2d 191. In this case I believe that it does and would affirm the judgment.