# MT. HEALTHY CITY SCHOOL DISTRICT BOARD OF EDUCATION *v.* DOYLE

No. 75–1278.  Argued November 3, 1976—Decided January 11, 1977

*Philip S. Olinger* argued the cause and filed briefs for petitioner.

*Michael H. Gottesman* argued the cause for respondent. With him on the brief were *Robert M. Weinberg, David Rubin, Eugene Green, Dennis Haines, Anthony P. Sgambatti II,* and *Barry R. Laine.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Doyle sued petitioner Mt. Healthy Board of Education in the United States District Court for the Southern District of Ohio. Doyle claimed that the Board's refusal to renew his contract in 1971 violated his rights under the First and Fourteenth Amendments to the United States Constitution. After a bench trial the District Court held that Doyle was entitled to reinstatement with backpay. The Court of Appeals for the Sixth Circuit affirmed the judgment, 529 F. 2d 524, and we granted the Board's petition for certiorari, 425 U. S. 933, to consider an admixture of jurisdictional and constitutional claims.

I

Although the respondent's complaint asserted jurisdiction under both 28 U. S. C. § 1343 and 28 U. S. C. § 1331, the District Court rested its jurisdiction only on § 1331. Petitioner's first jurisdictional contention, which we have little difficulty disposing of, asserts that the $10,000 amount in controversy required by that section is not satisfied in this case.

The leading case on this point is *St. Paul Indemnity Co.* v. *Red Cab Co.*, 303 U. S. 283 (1938), which stated this test:

"[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." *Id.*, at 288–289. (Footnotes omitted.)

We have cited this rule with approval as recently as *Weinberger* v. *Wiesenfeld*, 420 U. S. 636, 642 n. 10 (1975), and think it requires disposition of the jurisdictional ques-

tion tendered by the petition in favor of the respondent. At the time Doyle brought this action for reinstatement and $50,000 damages, he had already accepted a job in a different school system paying approximately $2,000 per year less than he would have earned with the Mt. Healthy Board had he been rehired. The District Court in fact awarded Doyle compensatory damages in the amount of $5,158 by reason of income already lost at the time it ordered his reinstatement. Even if the District Court had chosen to award only compensatory damages and not reinstatement, it was far from a "legal certainty" at the time of suit that Doyle would not have been entitled to more than $10,000.

## II

The Board has filed a document entitled "Supplemental Authorities" in which it raises quite a different "jurisdictional" issue from that presented in its petition for certiorari and disposed of in the preceding section of this opinion. Relying on the District Court opinion in *Weathers* v. *West Yuma County School Dist.*, 387 F. Supp. 552, 556 (Colo. 1974), the Board contends that even though Doyle may have met the jurisdictional amount requirement of § 1331, it may not be subjected to liability in this case because Doyle's only substantive constitutional claim arises under 42 U. S. C. § 1983. Because it is not a "person" for purposes of § 1983, the Board reasons, liability may no more be imposed on it where federal jurisdiction is grounded on 28 U. S. C. § 1331 than where such jurisdiction is grounded on 28 U. S. C. § 1343.

The District Court avoided this issue by reciting that it had not "stated any conclusion on the possible Monroe-Kenosha problem in this case since it seems that the case is properly here as a § 1331 case, as well as a § 1983 one." App. to Pet. for Cert. 14a–15a. This reference to our decisions in *Monroe* v. *Pape*, 365 U. S. 167 (1961), and *City of Kenosha* v. *Bruno*, 412 U. S. 507 (1973), where it was held

that a municipal corporation is not a suable "person" under § 1983, raises the question whether petitioner Board in this case is sufficiently like the municipal corporations in those cases so that it, too, is excluded from § 1983 liability.

The quoted statement of the District Court makes clear its view that if the jurisdictional basis for the action is § 1331, the limitations contained in 42 U. S. C. § 1983 do not apply. The Board argues, on the contrary, that since Congress in § 1983 has expressly created a remedy relating to violations of constitutional rights under color of state law, one who seeks to recover for such violations is bound by the limitations contained in § 1983 whatever jurisdictional section he invokes.

The question of whether the Board's arguments should prevail, or whether as respondent urged in oral argument, we should, by analogy to our decision in *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971), imply a cause of action directly from the Fourteenth Amendment which would not be subject to the limitations contained in § 1983, is one which has never been decided by this Court. Counsel for respondent at oral argument suggested that it is an extremely important question and one which should not be decided on this record. We agree with respondent.

The Board has raised this question for the first time in a document filed after its reply brief in this Court. Were it in truth a contention that the District Court lacked jurisdiction, we would be obliged to consider it, even as we are obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction. *Liberty Mutual Ins. Co.* v. *Wetzel,* 424 U. S. 737, 740 (1976); *Louisville & Nashville R. Co.* v. *Mottley,* 211 U. S. 149, 152 (1908). And if this were a § 1983 action, brought under the special jurisdictional provision of 28 U. S. C. § 1343 which requires no amount in controversy, it would be appropriate for this Court to inquire, for jurisdictional purposes,

whether a statutory action had in fact been alleged. *City of Kenosha* v. *Bruno, supra.* However, where an action is brought under § 1331, the catchall federal-question provision requiring in excess of $10,000 in controversy, jurisdiction is sufficiently established by allegation of a claim under the Constitution or federal statutes, unless it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction . . . ." *Bell* v. *Hood,* 327 U. S. 678, 682 (1946); *Montana-Dakota Utilities Co.* v. *Northwestern Pub. Serv. Co.,* 341 U. S. 246, 249 (1951).

Here respondent alleged that the Board had violated his rights under the First and Fourteenth Amendments and claimed the jurisdictionally necessary amount of damages. The claim that the Board is a "person" under § 1983, even assuming the correctness of the Board's argument that the § 1331 action is limited by the restrictions of § 1983, is not so patently without merit as to fail the test of *Bell* v. *Hood, supra.* Therefore, the question as to whether the respondent stated a claim for relief under § 1331 is not of the jurisdictional sort which the Court raises on its own motion. The related question of whether a school district is a person for purposes of § 1983 is likewise not before us. We leave those questions for another day, and assume, without deciding, that the respondent could sue under § 1331 without regard to the limitations imposed by 42 U. S. C. § 1983.

### III

The District Court found it unnecessary to decide whether the Board was entitled to immunity from suit in the federal courts under the Eleventh Amendment, because it decided that any such immunity had been waived by Ohio statute and decisional law. In view of the treatment of waiver by a State of its Eleventh Amendment immunity from suit in *Ford Motor Co.* v. *Dept. of Treasury,* 323 U. S. 459, 464–466 (1945), we are less sure than was the District Court

that Ohio had consented to suit against entities such as the Board in the federal courts. We prefer to address instead the question of whether such an entity had any Eleventh Amendment immunity in the first place, since if we conclude that it had none it will be unnecessary to reach the question of waiver.

The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, *Edelman* v. *Jordan,* 415 U. S. 651 (1974); *Ford Motor Co.* v. *Dept. of Treasury, supra,* but does not extend to counties and similar municipal corporations. See *Lincoln County* v. *Luning,* 133 U. S. 529, 530 (1890); *Moor* v. *County of Alameda,* 411 U. S. 693, 717–721 (1973). The issue here thus turns on whether the Mt. Healthy Board of Education is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. The answer depends, at least in part, upon the nature of the entity created by state law. Under Ohio law the "State" does not include "political subdivisions," and "political subdivisions" do include local school districts. Ohio Rev. Code Ann. § 2743.01 (Page Supp. 1975). Petitioner is but one of many local school boards within the State of Ohio. It is subject to some guidance from the State Board of Education, Ohio Rev. Code Ann. § 3301.07 (Page 1972 and Supp. 1975), and receives a significant amount of money from the State. Ohio Rev. Code Ann. § 3317 (Page 1972 and Supp. 1975). But local school boards have extensive powers to issue bonds, Ohio Rev. Code Ann. § 133.27 (Page 1969), and to levy taxes within certain restrictions of state law. Ohio Rev. Code Ann. §§ 5705.02, 5705.03, 5705.192, 5705.194 (Page 1973 and Supp. 1975). On balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State. We

therefore hold that it was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts.

## IV

Having concluded that respondent's complaint sufficiently pleaded jurisdiction under 28 U. S. C. § 1331, that the Board has failed to preserve the issue whether that complaint stated a claim upon which relief could be granted against the Board, and that the Board is not immune from suit under the Eleventh Amendment, we now proceed to consider the merits of respondent's claim under the First and Fourteenth Amendments.

Doyle was first employed by the Board in 1966. He worked under one-year contracts for the first three years, and under a two-year contract from 1969 to 1971. In 1969 he was elected president of the Teachers' Association, in which position he worked to expand the subjects of direct negotiation between the Association and the Board of Education. During Doyle's one-year term as president of the Association, and during the succeeding year when he served on its executive committee, there was apparently some tension in relations between the Board and the Association.

Beginning early in 1970, Doyle was involved in several incidents not directly connected with his role in the Teachers' Association. In one instance, he engaged in an argument with another teacher which culminated in the other teacher's slapping him. Doyle subsequently refused to accept an apology and insisted upon some punishment for the other teacher. His persistence in the matter resulted in the suspension of both teachers for one day, which was followed by a walkout by a number of other teachers, which in turn resulted in the lifting of the suspensions.

On other occasions, Doyle got into an argument with employees of the school cafeteria over the amount of spaghetti which had been served him; referred to students, in con-

nection with a disciplinary complaint, as "sons of bitches"; and made an obscene gesture to two girls in connection with their failure to obey commands made in his capacity as cafeteria supervisor. Chronologically the last in the series of incidents which respondent was involved in during his employment by the Board was a telephone call by him to a local radio station. It was the Board's consideration of this incident which the court below found to be a violation of the First and Fourteenth Amendments.

In February 1971, the principal circulated to various teachers a memorandum relating to teacher dress and appearance, which was apparently prompted by the view of some in the administration that there was a relationship between teacher appearance and public support for bond issues. Doyle's response to the receipt of the memorandum—on a subject which he apparently understood was to be settled by joint teacher-administration action—was to convey the substance of the memorandum to a disc jockey at WSAI, a Cincinnati radio station, who promptly announced the adoption of the dress code as a news item. Doyle subsequently apologized to the principal, conceding that he should have made some prior communication of his criticism to the school administration.

Approximately one month later the superintendent made his customary annual recommendations to the Board as to the rehiring of nontenured teachers. He recommended that Doyle not be rehired. The same recommendation was made with respect to nine other teachers in the district, and in all instances, including Doyle's, the recommendation was adopted by the Board. Shortly after being notified of this decision, respondent requested a statement of reasons for the Board's actions. He received a statement citing "a notable lack of tact in handling professional matters which leaves much doubt as to your sincerity in establishing good school relationships." That general statement was fol-

lowed by references to the radio station incident and to the obscene-gesture incident.[1]

The District Court found that all of these incidents had in fact occurred. It concluded that respondent Doyle's telephone call to the radio station was "clearly protected by the First Amendment," and that because it had played a "substantial part" in the decision of the, Board not to renew Doyle's employment, he was entitled to reinstatement with backpay. App. to Pet. for Cert. 12a–13a. The District Court did not expressly state what test it was applying in determining that the incident in question involved conduct protected by the First Amendment, but simply held that the communication to the radio station was such conduct. The Court of Appeals affirmed in a brief *per curiam* opinion. 529 F. 2d 524.

Doyle's claims under the First and Fourteenth Amendments are not defeated by the fact that he did not have tenure. Even though he could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, *Board of Regents* v. *Roth,* 408 U. S. 564 (1972), he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitu-

---

[1] "I. You have shown a notable lack of tact in handling professional matters which leaves much doubt as to your sincerity in establishing good school relationships.

"A. You assumed the responsibility to notify W. S. A. I. Radio Station in regards to the suggestion of the Board of Education that teachers establish an appropriate dress code for professional people. This raised much concern not only within this community, but also in neighboring communities.

"B. You used obscene gestures to correct students in a situation in the cafeteria causing considerable concern among those students present.

"Sincerely yours,
"Rex Ralph
"Superintendent"

tionally protected First Amendment freedoms.   *Perry* v. *Sindermann,* 408 U. S. 593 (1972).

That question of whether speech of a government employee is constitutionally protected expression necessarily entails striking "a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."   *Pickering* v. *Board of Education,* 391 U. S. 563, 568 (1968).   There is no suggestion by the Board that Doyle violated any established policy, or that its reaction to his communication to the radio station was anything more than an ad hoc response to Doyle's action in making the memorandum public.   We therefore accept the District Court's finding that the communication was protected by the First and Fourteenth Amendments.   We are not, however, entirely in agreement with that court's manner of reasoning from this finding to the conclusion that Doyle is entitled to reinstatement with backpay.

The District Court made the following "conclusions" on this aspect of the case:

"1) If a non-permissible reason, e. g., exercise of First Amendment rights, played a substantial part in the decision not to renew—even in the face of other permissible grounds—the decision may not stand (citations omitted).

"2) A non-permissible reason did play a substantial part.   That is clear from the letter of the Superintendent immediately following the Board's decision, which stated two reasons—the one, the conversation with the radio station clearly protected by the First Amendment.   A court may not engage in any limitation of First Amendment rights based on 'tact'—that is not to say that the 'tactfulness' is irrelevant to other issues in this case." App. to Pet. for Cert. 12a–13a.

At the same time, though, it stated that

> "[i]n fact, as this Court sees it and finds, both the Board and the Superintendent were faced with a situation in which there did exist in fact reason . . . independent of any First Amendment rights or exercise thereof, to not extend tenure." *Id.*, at 12a.

Since respondent Doyle had no tenure, and there was therefore not even a state-law requirement of "cause" or "reason" before a decision could be made not to renew his employment, it is not clear what the District Court meant by this latter statement. Clearly the Board legally *could* have dismissed respondent had the radio station incident never come to its attention. One plausible meaning of the court's statement is that the Board and the Superintendent not only could, but in fact *would* have reached that decision had not the constitutionally protected incident of the telephone call to the radio station occurred. We are thus brought to the issue whether, even if that were the case, the fact that the protected conduct played a "substantial part" in the actual decision not to renew would necessarily amount to a constitutional violation justifying remedial action. We think that it would not.

A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. The difficulty with the rule enunciated by the District Court is that it would require reinstatement in cases where a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the decision to rehire, and does indeed play a part in that decision— even if the same decision would have been reached had the incident not occurred. The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no

worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

This is especially true where, as the District Court observed was the case here, the current decision to rehire will accord "tenure." The long-term consequences of an award of tenure are of great moment both to the employee and to the employer. They are too significant for us to hold that the Board in this case would be precluded, because it considered constitutionally protected conduct in deciding not to rehire Doyle, from attempting to prove to a trier of fact that quite apart from such conduct Doyle's record was such that he would not have been rehired in any event.

In other areas of constitutional law, this Court has found it necessary to formulate a test of causation which distinguishes between a result caused by a constitutional violation and one not so caused. We think those are instructive in formulating the test to be applied here.

In *Lyons* v. *Oklahoma,* 322 U. S. 596 (1944), the Court held that even though the first confession given by a defendant had been involuntary, the Fourteenth Amendment did not prevent the State from using a second confession obtained 12 hours later if the coercion surrounding the first confession had been sufficiently dissipated as to make the second confession voluntary. In *Wong Sun* v. *United States,* 371 U. S. 471, 491 (1963), the Court was willing to assume that a defendant's arrest had been unlawful, but held that "the connection between the arrest and the statement [given several days later] had 'become so attenuated as to

dissipate the taint.' *Nardone* v. *United States,* 308 U. S. 338, 341." *Parker* v. *North Carolina,* 397 U. S. 790, 796 (1970), held that even though a confession be assumed to have been involuntary in the constitutional sense of the word, a guilty plea entered over a month later met the test for the voluntariness of such a plea. The Court in *Parker* relied on the same quoted language from *Nardone, supra,* as did the Court in *Wong Sun, supra.* While the type of causation on which the taint cases turn may differ somewhat from that which we apply here, those cases do suggest that the proper test to apply in the present context is one which likewise protects against the invasion of constitutional rights without commanding undesirable consequences not necessary to the assurance of those rights.

Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor"[2] in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

We cannot tell from the District Court opinion and conclusions, nor from the opinion of the Court of Appeals affirming the judgment of the District Court, what conclusion those courts would have reached had they applied this test. The judgment of the Court of Appeals is therefore vacated, and the case remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[2] See *Arlington Heights* v. *Metropolitan Housing Dev. Corp., ante,* at 270–271, n. 21.