Joan Rines NEEDLEMAN, Plaintiff,

v.

Jack R. BOHLEN et al., Defendants.

Civ. A. No. 73–669–C.

United States District Court,
D. Massachusetts.

Sept. 30, 1978.

Jeffrey M. Freedman, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for plaintiff.

C. Peter R. Gossels, Boston, Mass., for defendants.

OPINION

CAFFREY, Chief Judge.

This is a civil action brought pursuant to 42 U.S.C.A. § 1983 to redress alleged violation of plaintiff's First and Fourteenth Amendment rights. Jurisdiction is based on 28 U.S.C.A. §§ 1332 and 1343. This Court's pendent jurisdiction over certain state law claims is also invoked.

Plaintiff is currently employed by the town of Wayland, Massachusetts, as a seventh grade mathematics teacher. Defendants are the present and former Chairman and the members of the Wayland School Committee, the president and a former Superintendent of Schools in Wayland and a Wayland school principal. Plaintiff seeks both equitable and monetary relief.

Pretrial rulings have disposed of certain of plaintiff's claims. On December 20, 1974 a Memorandum and Order was filed, 386 F.Supp. 741 (D.C.Mass), which dismissed count two in its entirety and dismissed those portions of count three and count four of the complaint which alleged violations of 42 U.S.C.A. § 1985(3). Also dismissed were all claims against defendants to the extent they were sued in their official capacities.

In a post-trial memorandum, plaintiff characterized the case as having been reduced to two issues: (1) whether she was improperly demoted from her position as Chairman of the Mathematics Department in Wayland in violation of her due process rights under the Fourteenth Amendment, and (2) whether she was improperly denied an increment for 1972-1973 in violation of her due process and free speech rights. The defendants' position on both claims is that all constitutional and statutory requirements were complied with.

Following a one-day trial, I make the following findings of fact and rulings of law under Fed.R.Civ.P. 52(a):

The plaintiff, who is a member of the Massachusetts Bar, began teaching in Wayland in 1959. All of her teaching in that system has been Junior High Mathematics. On July 1, 1962, she was appointed to a position entitled "Team Leader-Chairman; Math Comm." (hereafter Team Leader). The purpose of that position was to coordinate the mathematics curriculum from the elementary to the junior high level and also from junior to senior high. The position involved no actual supervision of Math teachers. In fact, the Department was supervised by the Math Department head, a separate position. While holding the Team Leader position, Mrs. Needleman also continued teaching a ⅖ load. For carrying out the Team Leader responsibilities, she received an additional stipend.

Each year until 1967, plaintiff was reappointed as Team Leader. Although the title of the job varied, ranging from the term "team leader" to "coordinator" to "chairman," the job responsibilities remained the same, namely implementing math curricula among all educational levels. The position was always seen as a staff rather than line position in the school system. The reason plaintiff was not named Team Leader in 1967 was that she was on sabbatical during the 1967-68 academic year. Upon her return to the school system the following year, she resumed the Team Leader position.

During the 1969-1970 school year, plaintiff took a leave of absence without pay for personal reasons. At the time the Wayland School Committee approved her request for leave, she had been reappointed Team Leader for 1969-1970. In her absence that year, one Joseph E. Mauger held the position.

In June of 1970, Mrs. Needleman received a Doctorate in Education. She returned to her Wayland job the following September and was given a full-load teaching contract. The position she had held as a Team Leader was given to one Robert J. Haran. In May, 1970, when plaintiff received her contract for the 1970-1971 year, she wrote to the

Superintendent of Schools requesting resumption of her Team Leader position. She was informed by the Superintendent shortly thereafter that he was not recommending her reemployment. Haran held the Math Team Leader job through the 1971–1972 school year, at the end of which the position of Team Leader in Math was eliminated. At the time Mrs. Needleman was denied the Team Leader position in August of 1970, no notice or hearing was tendered to her prior to the School Committee's decision of nonreappointment.

In the spring of 1971, plaintiff filed a grievance with the Wayland Teachers Association. No hearing, however, was requested. Filing of the grievance led to a meeting with the School Committee on June 14, 1971, at which plaintiff was represented by counsel. Subsequently, the School Committee decided not to reappoint her as Team Leader for 1971–1972.

Pursuant to Mass.Gen.Laws Ann. ch. 149, §§ 178G–N (now ch. 150E), the Wayland School Committee since 1967 has entered into annual collective bargaining agreements with the Wayland Teachers Association. The Agreement in effect in 1971–1972 reserved to the School Committee the right to withhold a tenured teacher's annual salary increment in the event that that teacher's performance had been evaluated as "unsatisfactory." In March of 1972, plaintiff was given notice she would be denied the $700 annual increment for the 1972–1973 academic year on the basis of evaluations of her teaching performance as "unsatisfactory." No hearing was provided plaintiff prior to the School Committee's decision to deny her the increment. However, she had been informed by the Junior High School principal as early as November 29, 1971, that possible loss of her increment was being considered because her teaching performance was evaluated as "unsatisfactory." On both occasions when plaintiff was informed that loss of increment for unsatisfactory performance was being considered, numerous specific areas of unsatisfactory performance were identified.

Subsequent to the decision to withhold plaintiff's increment, plaintiff filed a grievance with the Teachers Association. The Association declined to appeal on her behalf the Superintendent's decision to the School Committee because they "could not find any violation of contract on the part of the administration," and the grievance procedures were not further pursued.

I turn next to the legal issues raised by plaintiff.

Plaintiff contends that Mass.Gen.Laws Ann. ch. 71, § 42A, gave her a sufficient expectancy of continued employment as Team Leader to constitute a protected property right. Mass.Gen.Laws Ann. ch. 71, § 42A provides in pertinent part:

§ 42A. Demotion of principals and supervisors; conditions

No principal or supervisor or professional employee performing the duties of a principal or a supervisor, by whatever title his position may be known, who has served in that position for over three years shall without his consent be demoted except for inefficiency, incapacity, unbecoming conduct, insubordination or other good cause; nor unless, at least thirty days, exclusive of customary vacation periods, prior to the meeting at which the vote is to be taken, he shall have been notified of such intended vote; nor unless, if he so requests, he shall have been furnished by the committee with a written charge or charges of the cause or causes for which his demotion is proposed; nor unless, if he so requests, he has been given a hearing before the school committee, which may be either public or private at the discretion of the school committee, and at which he may be represented by counsel, present evidence and call witnesses to testify in his behalf and examine them; nor unless the charge or charges shall have been substantiated; nor unless the superintendent shall have given the committee his recommendations thereon.

I rule that plaintiff failed to prove, at the trial, that her position as a Team Leader was a supervisory one, within the meaning

of ch. 71, § 42A, and, thus, I rule that plaintiff has no property interest protected by this statute.

A supervisory position involves more than the power to merely advise and suggest and includes a duty to oversee, review and correct the errors of those over whom supervision is to be exercised. One acting in a supervisory capacity has both authority and responsibility. *See Dimlich v. School Committee of Andover*, 344 Mass. 643, 184 N.E.2d 40 (1962).

Plaintiff presented no evidence at trial supporting her claim that she acted in a supervisory capacity. As developed at the trial, her own description of her duties as Team Leader, included such terms as "resource person" and "advisor to teachers on new materials." In fact, plaintiff testified that the position of Team Leader was created to provide a resource person to whom teachers could turn for advice without the fear of being evaluated by a superior.

In addition to the position of Team Leader held by plaintiff, there also exists in the Wayland School Department the separate and distinct position of Department Head. The duties of the head of the Math Department include hiring, evaluating and supervising math teachers as well as preparing and submitting the budget for the Math Department. The Superintendent of Wayland Schools viewed that position as authoritative in nature, and, consequently, a line position, as opposed to the plaintiff's former position which he considered to be a staff position advisory in nature. There is no claim that plaintiff ever performed any of the responsibilities of Department Head.[1]

Moreover, the Wayland School Committee did not consider the position of Team Leader protected by the terms of ch. 71, § 42A. There was testimony that the position of Coordinator was a subject of negotiations between the School Committee and the Wayland Teachers' Association. In those negotiations, the School Committee took the firm position, which was sustained by the Teachers' Association, that it was in the best interest of the School System and the children to keep such positions flexible, and that these would not be tenured positions.

Since this Court rules that plaintiff's position as a Team Leader was not a supervisory one within the meaning of ch. 71, § 42A, it follows that the statute did not confer upon plaintiff the right to continued employment in that position. Plaintiff does not point to any other statute or source that gives her a property right to the extra compensation she received for her duties as Team Leader. I find and rule that plaintiff held the Team Leader position at the will and pleasure of the School Committee. Hence, I rule that there exists no deprivation of a protected property right in derogation of plaintiff's Fourteenth Amendment rights.

Plaintiff next contends that she could not be denied an annual increment for the 1972–1973 academic year without first affording her a full adversary hearing. This Court rules that the Due Process Clause of the Fourteenth Amendment does not require a full adversary hearing in the instant matter.

In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the United States Supreme Court stated:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Here, plaintiff did have an expectancy, based on the terms of the Collective Bargaining Agreement between the Teachers Association and the School Committee entered into pursuant to Mass.Gen.Laws Ann.

---

1. The Massachusetts Appeals Court has assumed that a department head is covered by ch. 71, § 42A "as a professional employee performing the duties of a . . . supervisor." *O'Connor v. School Committee of Lowell*, Mass.App., 370 N.E.2d 1385 (1978).

ch. 149, §§ 178G–N, that the increment would not be withheld unless her teaching performance was evaluated as "unsatisfactory." The provision of the Agreement which granted plaintiff that contingent right to an increment, expressly provided the procedure by which "unsatisfactory" was to be determined, and omitted the procedural guarantees plaintiff now claims are mandated by the Constitution. The Supreme Court has held that the types of " 'property' protected by the Due Process Clause vary widely, and what may be required under that Clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests." *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15 (1974). The property interest which plaintiff asserts here, directly analogous to the property interest in *Arnett,* was itself conditioned by the procedural limitations which were set forth in the Agreement that granted that interest. *See id.* It follows, therefore, that the same rationale applies to these facts as that which applied in *Arnett.* On this basis, I rule that plaintiff's property interest does not require any additional safeguards other than those which were afforded her.

 Plaintiff conceded at the trial that she voted to ratify this Collective Bargaining Agreement. Further, plaintiff offered no evidence that defendants failed to comply with the Agreement's procedure. Both plaintiff's and defendants' evidence amply support the conclusion that defendants complied with the Agreement's procedural requirements. Since plaintiff's right to the increment was contingent upon a satisfactory performance, and the defendants, in accordance with the procedure required by the Agreement, determined that her performance was unsatisfactory, the School Committee could withhold the increment from plaintiff without violating her claimed Fourteenth Amendment rights. Any interest plaintiff had was further protected by the grievance procedure available to her; a process which determined plaintiff's rights under the Agreement had not been violated. Thus, I rule that the defendants did not deprive plaintiff of a property right in violation of rights protected by the Fourteenth Amendment.

Further, the withholding of the increment was not made because of her exercise of constitutionally protected First Amendment rights. To show an invasion of constitutional rights plaintiff had the burden at trial of proving that her conduct was both constitutionally protected and a "motivating factor" in the School Committee's decision to withhold the increment. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Even if plaintiff had met this burden, which she did not, the defendants established by a preponderance of the evidence that the School Committee would still have reached the same decision as to plaintiff's increment regardless of the presence or the absence of protected conduct. *Id.*

Therefore, I rule that plaintiff has failed to prove a violation of her First and Fourteenth Amendment rights and is not entitled to any relief.

Order accordingly.