No. 81-529

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

CHAUFFEURS, TEAMSTERS, AND HELPERS,
LOCAL UNION NO. 190,

                    Petitioner/Respondent

  and

STATE OF MONTANA BOARD OF PERSONNEL APPEALS,
              Respondent,
              Appellants.

  -vs-

CITY OF BILLINGS,

                  Petitioner/Respondent and Respondent.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
Diane G. Barz, Judge presiding.

Counsel of Record:

    For Appellants:

        Hilley and Loring, Great Falls, Montana
        James Gardner,Jr., Helena, Montana

    For Respondent:

        K. D. Peterson; Peterson, Schofield &
        Leckie, Billings, Montana

Submitted on Briefs: April 15, 1982

Decided: August 5, 1982

Filed: AUG 5 - 1982

_Thomas J. Kearney_
                   Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Susan Carlson, an animal warden employed by respondent, was terminated on March 10, 1980. Appellant Board of Personnel Appeals (BPA) found that she had been discharged because of her union activities, in violation of section 39-31-401(1) and (3), MCA, and ordered her reinstated with back pay. The District Court reversed the BPA's ruling because of improper procedure. We vacate the District Court decision and remand the case for further consideration by the BPA, section 2-4-704(2), MCA.

Initially, we note that the brief of Carlson's bargaining representative, appellant Chauffeurs, Teamsters and Helpers, contains no references to the record for any assertions contained in its statement of facts, in violation of Rule 23(a)(3), M.R.App.Civ.P. As an appellate court, we are usually confronted with at least two conflicting versions of what the dispositive facts in a given case are. The above rule was instigated so that we needn't search the entire transcript for each "fact" asserted by a party. To do so merely lengthens the time necessary for the preparation of the opinion and prolongs any final determination of the case.

Carlson was first employed by respondent on January 17, 1977, as a water department clerk. On July 1, 1977, she began work as a meter maid. She became active in the union representing city employees at that time, the American Federation of State, County and Municipal Employees (AFSCME) and filed a grievance against respondent.

On October 3, 1977, Carlson began working as an animal warden at the city animal shelter and shortly thereafter she

became shop steward. She served as steward for AFSCME until the end of May 1979. During that time she filed about six grievances including one alleging harassment by her supervisor which culminated in her supervisor being sent a warning to discontinue the harassment. In April 1979, this supervisor was replaced by another supervisor, Darlene Larson.

In late May 1979, appellant Teamsters defeated AFSCME as the city employees' bargaining representative and, since objections to the election were filed, the Teamsters were not certified by BPA until October 1979. During this time, Carlson received several written reprimands, including warnings for having an unauthorized rider in the animal van and conducting herself improperly at the animal shelter. On September 25, 1979, Larson completed an evaluation form on Carlson which rated her above average in most categories, after which time Carlson received a merit pay increase. In October 1979, Carlson was suspended for four days "because of insubordination and failure to obey direct orders" involving a leg problem and the suspension letter concluded with the statement that "any further violations will result in immediate dismissal." Due to the changeover in unions and election objections, there was no grievance procedure in effect at this time.

On February 2, 1980, during the contract negotiations between the Teamsters and the City, Carlson voiced her concerns about the working conditions at the animal shelter and on the next working day, Larson told Carlson she shouldn't have said what she did and that her facts were wrong. The first contract between the Teamsters and respondent was signed in mid-May 1980. The final event which precipitated Larson's termination involved a male schnauzer dog which

Carlson had picked up running at large on March 3, 1980.
Carlson did not check the animal in at the shelter because
she believed it belonged to a friend of hers (Ostwald) who
had reported that his dog was missing. After finding the
dog and talking to Ostwald, Carlson kept the dog at her
residence at Ostwald's request because he was in the hospital.

On March 5, 1980, another person who had lost a male
schnauzer (Wertz) called the shelter. Larson then called
Carlson who informed her that the dog had been returned to
its owner. On March 7, Wertz called Larson from Ostwald's
home, convinced that the dog was being hidden from her
there. Carlson and Larson went to Ostwald's home and, after
initially denying that Carlson had given him the dog, Ostwald
admitted that he once had a male schnauzer but that he
didn't have it any longer. Carlson stated the dog was at
Shepherd, Montana (where Carlson lived), but that nobody was
home. After further discussion, she stated the dog was at
her house but refused to take Larson there. The assistant
chief of police ordered Carlson (accompanied by Larson) to
retrieve the dog from her home in Shepherd and Carlson
complied, returning the dog to the shelter. At the shelter,
Wertz claimed the dog was hers and a veterinarian who had
cared for the dog corroborated her story. Carlson gave the
dog to Wertz.

On March 10, 1980, Carlson was discharged by Larson in
a letter which included the following statements:

> "Due to insubordination and non-cooperation
> with your supervisors on incidents relating
> to events the week of March 3 to March 8, you
> are hereby terminated as of today.

> "You were not cooperative in being truthful
> with me as to the whereabouts of a male schnauzer
> captured by you while on duty, March 3, nor in my

-4-

efforts to clear the situation with a public citizen's suspicions of the shelter and you concerning the dog.

"You have been previously warned on more than one occasion about cooperating with other city employees."

On March 17, 1980, Carlson filed an unfair labor practice complaint with the BPA. She alleged that the above reasons were pretextual and that the actual reason for her termination was her union activity, a violation of section 39-31-401 (1) and (3), MCA. A BPA-appointed hearing officer decided in Carlson's favor ordering respondent to reinstate her with back pay and this recommendation was adopted by the BPA. Respondent refused to do so and on May 5, 1981, the Teamsters filed a petition for enforcement in the District Court. On May 11, 1981, respondent filed a petition to review the BPA's final order and the cases were consolidated. On November 9, 1981, the District Court reversed the BPA and this appeal followed.

Before we begin discussing the issues involved in this case, a few words about our standard of review are in order. Both the District Court's and this Court's standard of review are dictated by section 2-4-704(2), MCA, which provides as follows:

"(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(a) in violation of constitutional or statutory provisions;

"(b) in excess of the statutory authority of the agency;

"(c) made upon unlawful procedure;

"(d) affected by other error of law;

"(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

"(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

"(g) because findings of fact, upon issues essential to the decision, were not made although requested."

The District Court reversed the BPA on two grounds of unlawful procedure, a legitimate subject of inquiry under section 2-4-704(2)(c), MCA. The District Court first found the BPA erred in giving primary weight to evidence of Carlson's union activities occurring more than six months prior to the filing of her unfair labor practices claim. The District Court also found that the BPA erred in excluding evidence of Carlson's discipline problems prior to her merit increase. Thus we frame the issues on appeal as follows:

1. Whether the District Court erred in reversing the BPA because it gave primary weight to incidents that occurred more than six months prior to the filing of Carlson's claim;

2. Whether the District Court erred in reversing the BPA because it did not admit evidence of Carlson's work history prior to her merit increase;

With regard to the first issue, the District Court found that the BPA erred in according substantial weight to Carlson's union activities occurring more than six months prior to the filing of her claim.

Conclusion of law no. 2 reads: "The Board erred in giving primary weight to union activities which occurred more than six (6) months prior to the filing of the claim of unfair labor practices."

-6-

In the court's memorandum accompanying its findings and conclusions, we find the following sentence: "The only evidence of union activity falling within the period is Carlson's appearance at negotiating sessions on February 2, 1980, wherein she appeared with about 25 other City employees to discuss conditions of their working areas."

In support of its decision, the District Court cited section 39-31-404, MCA and N.L.R.B. v. MacMillan Ring-Free Oil Co., Inc. (9th Cir. 1968), 394 F.2d 26. Section 39-31-404, provides as follows:

> "39-31-404. Six-month limitation on unfair labor practice complaint--exception. No notice of hearing shall be issued based upon any unfair labor practice more than 6 months before the filing of the charge with the board . . ."

Respondent City cites MacMillan, supra, also and Sioux Quality Packers v. N.L.R.B. (8th Cir. 1978), 581 F.2d 153, in support of the proposition that the BPA should not have used evidence of Carlson's activity occurring outside the six-month period as the principal foundation for its reasoning. The Teamsters Union does not dispute the rationale of these cases but argues that they are inapplicable here because they hold that the six month period applies to the employer's activities and not the employee's. Appellant BPA contends that the federal equivalent of section 39-31-404, MCA, has never been interpreted the way the District Court did in this case and argues further that it is a statute of limitations barring the filing of a claim on an incident after six months, and not a rule of evidence prohibiting the consideration of relevant testimony concerning anti-union animus which is six months or more old.

All parties agree that section 39-31-404, MCA, is substantially silimar to the National Labor Relations Act § 10(b), 29 U.S.C. § 160(b) (1976) and interpretations thereunder are pertinent here.

The District Court properly relied on MacMillan for the proposition that a violation within the six-month period must stand on its own:

> "To recapitulate, then, we hold that while evidence of events occurring more than six months before the filing of a charge may be used to 'shed light' upon events taking place within the six-month period, the evidence of a violation drawn from within that period must be reasonably substantial in its own right." 394 F.2d at 33.

However, the actual holding of that case revolves around the charge of the employer's (MacMillan's) refusal to bargain with the union and the focus on the whole case is on the employer's activities and lack of promptness. The court continues from the above quote by saying:

> "Where, as here, that condition is not met, it is impermissible under the policies embodied in section 10(b) for a finding of an unfair labor practice to be justified by primary reliance on the earlier events. Thus the Board's conclusion that MacMillan improperly refused to bargain with the union during the applicable limitations period cannot be upheld." 394 F.2d at 33.

The District Court erred in applying section 39-31-404, MCA, to Carlson's union activities and other interpretations of its federal counterpart bear this out. In Wilson Freight Co. (1978), 234 N.L.R.B. 844, 97 L.R.R.M. 1412, rev'd. on other grounds (1979), 604 F.2d 712, an employee (Smith) filed a number of grievances and was active in the union prior to his discharge for conduct exceeding his authority as a shop steward. The administrative law judge noted with regard to the employer's answer:

"It also raised as an affirmative defense
that the activities in which Smith is alleged
to have engaged in occurred more than 6 months
prior to the filing of the unfair labor practice
charge, therefore the matter is barred by Section
10(b) of the Act.

". . .

"Section 10(b) of the Act is unambiguous in
clearly stating that it is the unfair labor
practice, not the employees' concerted or
union activity, which must be within the 10(b)
period. The unfair labor practice in the
present case occurred with Smith's discharge on
September 3, 1976. Smith filed the unfair
labor practice charge based upon this dis-
charge on October 20, 1976. Therefore, Smith
is well within the 10(b) period and I reject
Respondent's affirmative defense in this regard."
(Emphasis added.)  234 N.L.R.B. at 849, 97 L.R.R.M.
at 1412.

Another case worthy of note is Inland Steel (1981), 257
N.L.R.B. No. 13 (¶ 18,238), 107 L.R.R.M. 1456. In Inland
Steel, an employee had been active in his union (filing a
number of complaints) and in workers' rights movements prior
to his voluntary termination of employment. The N.L.R.B.
found that his employer refused to hire him seven months
later because of his union activities during his prior
employment. There is no indication of union activities
during his unemployment. Although the six month statute is
not specifically addressed, the N.L.R.B. clearly examined
and based its decision on the employee's activity which
occurred more than six months prior to the filing of the
claim.

In Axelson Manufacturing Co. (1950), 88 N.L.R.B. 761,
25 L.R.R.M. 1388, the National Labor Relations Board held:

"The employer asserts that Section 10(b) of the
amended NLRB prohibits the introduction of
evidence as to events occurring more than six
months prior to the service of the charge. This
contention is without merit.

"Section 10(b) forbids the issuance of complaints
and consequently findings of violations of the

statute based on conduct which did not occur within the six months' period. However, it does not forbid the introduction of relevant evidence bearing on the issue of whether a violation has occurred during the six months. Section 10(b) enacts a statute of limitations and not a rule of evidence." (Emphasis added.) Axelson, 88 N.L.R.B. at 765-66, 25 L.R.R.M. at 1388.

Section 39-31-404, MCA, requires an employee to file a charge with the BPA within six months after an alleged unfair labor practice. Here the alleged unfair labor practice occurred on March 10, 1980, and Carlson filed her complaint on March 17, well within the six month period. The construction placed on the statute by the District Court is not borne out by the above cases or by the language of the statute itself. See also Local Lodge No. 1424 v. N.L.R.B. (1960), 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832.

The second issue relates to the BPA's failure to consider Carlson's conduct prior to her merit increase. The hearings officer made the following statements, which were adopted by the BPA:

"All of the events which occurred prior to Carlson's merit increase must be ignored as far as the City's argument in support of its decision is concerned. At the time of the merit increase Carlson was considered to be just that -- an employee worthy of a merit increase."

The District Court stated the following with regard to this issue:

"In examining whether the City had met its burden of proof, the Board excluded from consideration all evidence of disciplinary problems relative to Carlson prior to her merit increase of October 3, 1979. Such exclusion has no basis in statutory or case law and was therefore improper. The fact, that an employer chooses to give a merit increase does not cause an employee's work history to vanish. It remains relative to the overall picture, and to ignore it is to place an unwarranted, artificial limitation on the employer's review process."

-10-

Respondent City argues that a satisfactory performance rating does not erase prior disciplinary actions, citing Rockland-Bamberg Print Works, Inc. (1977), 231 N.L.R.B. 305, 96 L.R.R.M. 1237 and Concrete Technology, Inc. (1976), 224 N.L.R.B. 961, 93 L.R.R.M. 1282. The Teamsters have not referred us to any case which directly holds (as the hearings officer did) that all events occurring prior to a pay raise must be ignored; however, a number of cases are cited where unlawful discharges were found after pay increases were given, including N.L.R.B. v. Evans Packing Co. (6th Cir. 1972), 463 F.2d 193; Lynch-Davidson Motors, Inc. (1970), 183 N.L.R.B. 841, 76 L.R.R.M. 1484 and Draggoo Electric Co., Inc. (1974), 214 N.L.R.B. 847, 88 L.R.R.M. 1312.

The District Court's position on this issue was correct and the hearing officer should have included evidence of events occurring prior to Carlson's merit increase. The hearing officer cited no authority for his position and the union has not cited any case directly on point. We find the more persuasive reasoning to be along the lines of the cases cited by the City above. For this reason, we remand this case to the BPA for consideration and a decision in light of events occurring prior to Carlson's merit increase as well as subsequent happenings.

Although not necessary to a resolution of this case, we will comment briefly on the other issues raised by appellant not previously addressed herein. Appellant argues that the District Court erred in considering alleged misconduct not mentioned in the notice of discharge, citing Board of Trustees v. Superintendent of Public Instruction (1977), 171 Mont. 323, 557 P.2d 1048. In support of this contention appellant quotes the following paragraph from the notice of discharge:

-11-

> "Due to insubordination and noncooperation with
> your superiors on incidences relating to events
> the week of March 3 to March 8, you are hereby
> terminated as of today."

Appellant contends that only events relating to the schnauzer

incident, i.e., the events occurring in the week of March

3 to March 8, should have been considered. However, a close

examination of the rest of the letter (set out verbatim

earlier in this opinion) indicates the basis of the charge

was Carlson's noncooperation with other employees including

her supervisors. There is a sufficient nexus between the

other incidents considered by the District Court reflecting

Carlson's noncooperation and the discharge letter to warrant

the District Court's action.

Appellant next contends that the District Court erred

in shifting the burden from the employer to the employee,

pointing to the following language in the District Court's

findings of fact:

> "Susan Carlson did not show by reliable probative
> and substantial evidence on the whole record that
> the City would not have discharged her but for
> her union activity."

We recently adopted the "but for" test enunciated in Mt.

Healthy City School District Board of Education v. Doyle

(1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, for dual

motivation cases under Montana's Collective Bargaining Act,

Board of Trustees v. State ex rel. Board of Personnel Appeals

(1979), ___ Mont. ___, 604 P.2d 770, 36 St.Rep. 2289.

In Board of Trustees, we quoted from the Mt. Healthy

opinion as follows:

> "Initially, in this case, the burden was pro-
> perly placed upon respondent to show that his
> conduct was constitutionally protected, and that
> this conduct was a 'substantial factor'--or to
> put it in other words, that it was a 'motivating
> factor' in the Board's decision not to rehire
> him. Respondent having carried that burden, however,

the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." 429 U.S. at 285-287, 97 S.Ct. at 575-576. ___ Mont. at ___, 604 P.2d at 777, 36 St.Rep. at 2297.

Here the District Court's statement was inaccurate. The Mt. Healthy test in this case required Carlson to show that her protected union activity was a substantial or motivating factor in the City's determination to discharge her. The burden then shifts to the City to show that it would have terminated her, absent her protected activity, i.e., it would be an unfair labor practice by the City if, but for Carlson's union activity, she would not have been terminated.

Finally, appellant contends that the District Court erred in substituting its judgment for that of the agency on questions of fact. As an example, appellant refers us to the District Court's findings that "Carlson was untruthful, devious, deceptive" and that "[i]t is clear that the incident which resulted in her termination was sufficient cause for discharge without any previous warnings." Appellant argues there were no such findings of fact made by the hearings officer.

It is true that a court may not substitute its judgment for the agency's on questions of fact, section 2-4-704(2), MCA. Although these statements appear in the District Court's findings of fact, they are actually conclusions drawn from the facts found by the hearings officer, which the District Court accepted in finding of fact no. 3. There was no error committed by the District Court in this regard.

Vacated and remanded for proceedings not inconsistent with this opinion.

_Frank L. Haswell_
_____
Chief Justice

-13-

We concur:

_____
Gene B. Daly

_____

_____
Justices

-14-