Baldomero **ARBONA TORRES**, et al.,
Plaintiffs, Appellees,

v.

Awilda **APONTE ROQUE**, etc., et al.,
Defendants, Appellants.

No. 86–2058.

United States Court of Appeals,
First Circuit.

Argued Sept. 16, 1987.
Decided Oct. 16, 1987.

Jose A. Andreu Garcia, San Juan, P.R., with whom Manuel E. Andreu Garcia, William Reyes Elias, Guaynabo, P.R., Rafael A. Robles Diaz, Hector Rivera Cruz, Secretary of Justice, and Rafael Ortiz Carrion, Sol. Gen., were on brief, for defendants, appellants.

Harvey B. Nachman, with whom Law Offices of Nachman & Fernandez-Sein, Santurce, P.R., were on brief, for plaintiffs, appellees.

Before COFFIN, ALDRICH and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

Plaintiffs are fourteen former employees in the warehouse section of the Puerto Rico Department of Public Education's School Lunch Program. Their appointments expired on June 30, 1985 and were not renewed. Thereafter they brought this action under 42 U.S.C. § 1983 against defendants, who are all Department or Program officials. Plaintiffs alleged that they were denied reappointment because of their political affiliation, in violation of the first amendment, and that they were deprived of a property interest in their jobs, in violation of the fourteenth amendment's due process clause. The district court issued a preliminary injunction ordering plaintiffs' reinstatement with back pay; defendants now appeal the issuance of the injunction.[1] Finding no abuse of discretion, we affirm.

Defendants do not argue that political affiliation was an appropriate requirement for plaintiffs' positions. Rather, on this appeal they challenge only the district court's findings (1) that the failure to reappoint plaintiffs was in fact due to their political affiliation and (2) that defendants failed to establish that the nonrenewals would have occurred regardless of plaintiffs' political affiliation. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). After recounting the background, we review in turn each of these findings, mindful that if either is shown to be clearly erroneous, the issuance of an injunction based thereon would be an abuse of discretion.

I.

Because the School Lunch Program ("Program") is financed entirely with federal funds, the amount of which may vary from year to year, plaintiffs were among the hundreds of Program employees who receive "transitory," one-year appointments that are renewed as a matter of course if funding permits. Such transitory employees are to be distinguished from career employees, who must compete for their positions but who may only be discharged for cause. The use of transitory employees thus gives the Program more flexibility to reduce its workforce in the

---

**1.** Although defendants suggest that an order to reimburse plaintiffs' backpay out of Commonwealth of Puerto Rico funds might be barred by the eleventh amendment, they note that the District Court ordered them to make every effort to obtain these funds not from the Commonwealth but from the United States Department of Agriculture, which funds the School Lunch Program. They therefore do not argue the eleventh amendment point on this appeal, and we see no need to pass upon it.

event of a cutback in federal funding. The arrangement also saves the Program the expense of contributing to the more generous benefits enjoyed by career employees.

In November of 1984, after eight years of New Progressive Party (NPP) government, the Popular Democratic Party (PDP) won the gubernatorial elections in Puerto Rico, and defendant Aponte Roque was named Secretary of Public Education. On May 20, 1985 she instructed her subordinates, including defendant Aponte Colon (hereinafter "Aponte"), Director of the School Lunch Program and a PDP member, not to renew any transitory appointments unless they were "strictly indispensable." Thereafter, Aponte selected two Program employees, Nydia Prestamo and Juan Berrios, to assist her in selecting the transitory employees in the warehouse section who would not be reappointed and whose positions would be consolidated with others and/or filled by career employees. Prestamo was a PDP member who had never worked in the warehouse section of the Program. Berrios had been forced out of the NPP and had run for office on the Renewal Party ticket in 1984, and he had not performed any work in the warehouse section since 1981. On the recommendation of Prestamo and Berrios, plaintiffs were denied reappointment. Numerous other transitory employees in other sections were also not reappointed.

## II.

We review the evidence relevant to whether plaintiffs' political affiliation led to their nonrenewal. Plaintiffs were all active members of the NPP, a fact that was well known in their communities. Berrios acknowledged that he knew one plaintiff to be an NPP member, and he stated his belief that certain employees whose appointments *were* renewed were NPP members. Moreover, Berrios had himself been an NPP member and activist, and thus the district court was entitled to disbelieve Berrios' protestations that he was unaware

of the other plaintiffs' NPP affiliation. Similarly, in view of Aponte's admission that she knew of the affiliations of Prestamo and Berrios, the district court was entitled to disbelieve her assertion that she was unaware of plaintiffs' affiliations. Finally, appellant's counsel conceded at oral argument that Puerto Rico is a small island, where Aponte, Prestamo, or Berrios might well know of the affiliation of active NPP members such as plaintiffs.

The district court also had before it affidavits in which several of the plaintiffs reported statements by Berrios and Aponte indicating that the nonrenewal of plaintiffs was due to their NPP affiliation. Plaintiff Torres Rodriguez reported that Berrios had told him: "when you lose your jobs blame the P.N.P [NPP] because they didn't make your jobs permanent, don't blame the Populares [PDP], because they must defend their own." Plaintiff Arbona Torres stated that Aponte had told him that because "there had been a change of administration she had to bring in her own people." Plaintiff Cortes Velez stated that Aponte had told him that "she [Aponte] had been just sitting there for 8 years and that now it was her turn, she had the power." The district court was entitled to disbelieve Aponte's and Berrios' denials that they had made these statements.

Plaintiff Santiago Roman reported that when the PDP administration took over in January of 1985, he and other warehouse supervisors, who the record shows were NPP members, were ostracized, ignored, and given no work to do by the central office. There was also substantial evidence that while all transitory employees received a letter instructing them to use their accumulated vacation time immediately, PDP members were told orally that they could ignore the letter.[2]

Plaintiffs presented evidence that numerous employees who were PDP members were reappointed, and defendants did not identify any PDP members who were denied reappointment. Among the transitory

---

**2.** Although the evidence is unclear as to why plaintiffs felt these forced vacations to be undesirable, we nevertheless find the evidence significant as an additional indicator that personnel policies were influenced by political affiliation.

employees who were reappointed, and who took over some of plaintiffs' duties, defendants testified that several were NPP members, while plaintiffs' affidavits identified these same reappointed employees as PDP members. The district court was entitled to resolve this credibility dispute in plaintiffs' favor. Moreover, even if the district court had found that some of the reappointed employees were NPP members, that would not negate the inference that NPP membership played a role in the nonrenewal of plaintiffs' appointments. The district court could reasonably find that the purge, although incomplete, was still a purge.

In sum, there was ample evidence to support the district court's finding that plaintiffs' political affiliation was a "substantial factor" leading to the nonrenewal of their appointments. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. We simply are not left with the definite and firm conviction that a mistake has been committed in this regard.

### III.

The district court also found that defendants did not meet their burden of establishing that the nonrenewals would have occurred regardless of plaintiffs' political affiliation. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. Defendants had asserted that the nonrenewals were intended (1) to reduce the Department's large budget deficit by thinning the ranks of nonessential transitory employees, and (2) to implement a preference for career employees over transitory employees that defendants assert is embodied in the Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit. 3, §§ 1301–1431 (1978 & Supp. 1986). The district court characterized these theories as "just a subterfuge to eliminate political undesirables." On this record we cannot say that this finding was clearly erroneous.

■ There was conflicting evidence as to whether the personnel changes implemented by defendants were calculated to result in any net economic savings. Defendant Aponte asserted that at least some of the changes were designed to save money, and the consolidation of several of plaintiffs'

positions into a single career position would certainly have had that effect. But some plaintiffs' positions were later filled one-for-one by career employees, who defendants admitted are more costly. Other plaintiffs' positions were filled, at least initially, by other, sometimes less-qualified transitory employees, the employment of whom would not have resulted in any savings at all. Overall, there was little evidence to suggest that defendants, either before or after the nonrenewals, had a clear idea of the economic impact of each nonrenewal.

There was also a paucity of evidence to support defendants' contention that only "nonessential" employees were denied reappointment. Defendant Aponte was unable to define "essential," other than to explain that it meant "strictly indispensable" and to offer the circularity that if an employee had been reappointed, he or she "must have been essential." She professed to rely on Prestamo and Berrios to perform a "study" of which transitory employees in the warehouse section were nonessential. Yet neither Prestamo, who had never worked in the warehouse section, nor Berrios, who had not worked there since 1981, could claim familiarity with the section's operations. Berrios admitted that the entire "study" was done from the central office, without visiting the warehouses in question, and that its results were never put in writing. An obvious inference was that the "study" was neither thorough nor systematic. And defendants could not offer any consistent explanation as to why many of the plaintiffs, experienced regional warehouse supervisors, were deemed nonessential and not reappointed, while at the same time numerous lower-level transitory personnel were deemed essential and reappointed. Plaintiff Rivera Texidor, chief of the warehouse section, reported that Aponte paid no attention to his suggestion that the warehouse supervisors were needed and should be reappointed.

Finally, there was little evidence to support defendants' claim that their intent was to implement the Puerto Rico Public Service Personnel Law's preference for career

over transitory employees.[3] The May 20, 1985 instruction to Aponte to deny reappointment to nonessential transitory employees did not mention this rationale. In her own testimony, Aponte invoked this rationale inconsistently, at times alternating it with her economic rationale. Moreover, the evidence that some plaintiffs' positions were later filled by other transitory employees, and that transitory employees who were PDP members were reappointed, casts doubt on whether defendants ever attempted to substitute career for transitory employees in a systematic, nondiscriminatory fashion.

In sum, the district court was not clearly erroneous in rejecting as pretextual the proffered rationales for defendants' actions. Nor, as we have seen, did the court err in finding that plaintiffs' political affiliation was a substantial factor leading to the nonrenewal of their appointments. There was thus no abuse of discretion in the issuance of the preliminary injunction.

*Affirmed.*

---

**3.** We express no opinion on the question whether the Public Service Personnel Law actually does embody such a preference.