NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0505n.06
Filed: July 18, 2007

No. 06-3527

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARK A. LESLIE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| BRUCE JOHNSON, ET AL., | ) | District of Ohio |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before:        BOGGS, Chief Judge; CLAY and ROGERS, Circuit Judges.

        BOGGS, Chief Judge.  Mark A. Leslie, an attorney licensed in Ohio and proceeding pro se, appeals a district court grant of summary judgment in favor of the defendants in his civil rights action filed under 42 U.S.C. 1983.[1]  We affirm.

I

        The factual background of this case was thoroughly discussed in the district court's opinion and order.  In brief, Leslie worked as an in-house attorney for the Ohio Department of

---

[1]Leslie's original complaint included state law claims that were omitted from his amended complaint.  The district court nevertheless addressed those claims, and declined to exercise supplemental jurisdiction over them in light of its resolution of the federal claims.

Development from July 2000 until his dismissal in March 2002. As of August 22, 2000–after a short period as an intermittent employee–he served as Chief of Compliance, and was responsible for, among other things, reviewing loan programs and particular loan closings for the Ohio Finance Authority, a subsidiary agency of the ODOD. During the course of his employment, he questioned the validity of a number of proposals and transactions, the details of which are irrelevant to his appeal.

Also during the course of his employment, Leslie became separated from his wife, and subsequently began seeking a relationship–beyond his existing professional one–with Karen Banyai, manager of OHFA's Housing Development Loan Program and Housing Development Assistance Program. There is some dispute as to the exact nature of the interactions, and the clarity with which Banyai initially indicated her lack of interest in a romantic relationship with Leslie. There is, however, no dispute that Leslie persisted, and that after ODOD supervisors and Human Resources officials became aware of the situation, he was told specifically not to have any further personal communications with Banyai. After a brief period of apparent compliance, Leslie again began making overtures, including a call to Banyai's home on Thanksgiving Day, and passing her a note about church-affiliated prisoner outreach programs. He was again warned by his superiors to cease all such contacts. Within a few weeks, however, he had made a further phone call to Banyai's home and given her written materials, including materials from a religious group with which Leslie worked, and a note inviting her to help him and the group develop a spreadsheet for their volunteer directory. After discussions among management, and Leslie's admission that he made the overtures in question, ODOD's director terminated Leslie for insubordination for his continued unwelcome contact with Banyai.

2

**II**

Leslie initially pursued a "whistleblower" First Amendment claim, arguing that his discharge was in retaliation for his speech questioning OHFA loans and programs (some of which had occurred in the period leading up to his dismissal), which, he contends, were matters of public concern.  He now concedes, however, in his reply brief, that the Supreme Court's recent decision in *Garcetti v Ceballos*, 126 S. Ct. 1951 (2006), precludes his federal claim under the First Amendment, inasmuch as it made clear that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 1960.  There is no question, and Leslie now concedes, that his allegedly whistleblowing speech was the product of his official duties, which required him to review OHFA practices.

**III**

Leslie continues to maintain, however, that the communications to Banyai that precipitated his dismissal constituted protected religious expression, and that his dismissal was in retaliation, thus violating his free expression rights under the First Amendment.  We review the district court's grant of summary judgment de novo. *Lukowski v. CSX Transp., Inc*., 416 F.3d 478, 482 (6th Cir. 2005).  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

3

as a matter of law." Fed R. Civ. P. 56(c).

Leslie has failed to proffer evidence to support a conclusion that the religious content of his expression was a "substantial" or "motivating factor" in ODOD's decision to terminate him, a showing that is his burden to establish, and only then the defendant's to rebut. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Perry v. McGinnis*, 209 F.3d 597, 604 (6th Cir. 2000). Leslie "may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent. Rather, the employee must link the speech in question to the defendant's decision to dismiss" him. *Bailey v. Floyd County Bd. of Educ. ex rel. Towler*, 106 F.3d 135, 145 (6th Cir. 1997) (internal citations omitted).

In this case, Leslie has failed to present evidence linking the religious aspect of his speech and communications to the ODOD's decision to terminate his employment. The evidence undisputedly shows that Leslie repeatedly harassed Banyai with unwanted, invasive, and personal communications both at her home and at work. The record further shows that Leslie's supervisors made several attempts to get Leslie to cease such communications. Leslie repeatedly ignored those instructions–as he admits, claiming only that he failed to understand the precise scope of the instructions–and continued to communicate with Banyai on matters only some of which in any way concerned religion. He has offered no evidence to suggest that ODOD would have sought to punish him specifically for the religious content of his communications. Thus, even if Leslie's communications concerning the activities of religious organizations amounted to protected speech–a question we need not reach–there is no basis for a reasonable juror to conclude that it was this speech, rather than Leslie's repeated insubordination and unwelcome

4

contact with Banyai, that motivated his termination.

## IV

For the foregoing reasons, the district court's grant of summary judgment in favor of the defendants is AFFIRMED.