**ROCKLAND COUNTY SHERIFF'S DEPUTIES ASSOCIATION, INC., et al., Plaintiffs,**

v.

**John GRANT, Joseph E. Suarez, John Leavy, Thomas J. Goldrick and the County of Rockland, Defendants.**

No. 87 Civ. 3657 (GLG).

United States District Court, S.D. New York.

Oct. 8, 1987.

Bob A. Kramer, Pearl River, N.Y., for plaintiffs.

Birbrower, Montalbano, Condon & Frank, P.C., New City, N.Y., for defendants; Leonard J. Birbrower, of counsel.

## OPINION

GOETTEL, District Judge.

In light of our having issued a decision on an earlier motion in this case, we will assume familiarity with the underlying facts. Our prior decision held that the plaintiffs stated a claim under 42 U.S.C. § 1983 (1982) only insofar as they alleged that the defendants have acted in bad faith in their labor negotiations with the plaintiffs in retaliation for the plaintiff Association's failure to endorse the defendant Grant in his election bid.

The motion before us is the defendants' motion for summary judgment dismissing the action in its entirety, and for attorneys' fees, sanctions, and costs.[1] Because we find that there is no genuine issue as to the defendants' motivation for their negotiation stance, and because we find that such motivation was not retaliation for the plaintiffs' lack of endorsement, we grant the motion to dismiss.

---

1. In their supporting memorandum, the defendants also request that any claim for punitive damages against Rockland County be stricken. Because the plaintiffs' counsel has submitted an affirmation that the plaintiffs do not seek punitive damages against the County, but only against the individual defendants, any claim for punitive damages against the County may be deemed withdrawn.

DISCUSSION

### a. Summary Judgment

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inference against the moving party. *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 11 (2d Cir.1986). Although it is not for the Court, on such a motion, to resolve disputed issues of fact, nevertheless it is within the Court's province to decide whether the issues raised are genuine or whether they constitute mere speculation or conjecture. Issues based on speculation or conjecture will not defeat a summary judgment motion. *Knight*, 804 F.2d at 12.

■ Claims such as the one at bar, which are premised on alleged violations of civil rights, or on labor disputes, typically turn on issues of fact concerning good faith or intent. They are therefore usually unsuited for summary judgment. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2730 (1983). Notwithstanding this premise, if the question of good faith or intent is not a genuine issue, but rather constitutes mere surmise, summary judgment is appropriate.

■ Such is the case here. The plaintiffs provide only the weakest of reasoning to support their claim, and only the most meager opposition to the defendants' proofs that the motivation behind their actions was not retaliation for the Association's lack of endorsement. Their opposition, both in their papers and at oral argument, barely touches the defendants' arguments. It primarily consists of conclusory allegations of political retribution, a diatribe of the long and tortuous history of the negotiations, and the circular reasoning that the defendants' negotiation stance proves that they are taking that stance in order to retaliate for the failure to endorse Grant.

The best support for the plaintiffs' claim lies in remarks allegedly made by Mr. Suarez, the County attorney and a member of its negotiating team, to Mr. Kruse, who is representing the plaintiffs in the negotiations. The plaintiffs claim that Suarez' statements were to the effect that Grant had adopted the negotiating position that he did because of "political considerations and reasons." Kruse says that when he pressed Suarez to be more specific, "he would simply smile ... and say nothing further." The plaintiffs infer that the political reason to which Suarez allegedly was referring was their failure to endorse Grant, and claim that this inference is the only reasonable one which can be drawn.

The strength of this argument is belied by the plaintiffs' own complaint. The complaint itself suggests other possible political reasons for the defendants' negotiating stance. For example, the complaint alleged that the defendants were motivated by a desire to promote an image of Grant as tough with unions. Thus according to the plaintiffs' own suggestion, a political motive may underlie the defendants' negotiations which is not retaliatory.

Another indication of the lack of substance to the plaintiffs' claim lies in their comparison of the County's treatment of the plaintiff Association and its treatment of another union representing County employees, the AFSCME. The plaintiffs claim that the AFSCME was treated well by Grant and his associates, and attribute such treatment to the fact that the AFSCME endorsed Grant. However, the defendant Grant claims that in fact the AFSCME did not endorse Grant. If this is true, the plaintiffs' comparison falls. The plaintiffs counter this point with the following reasoning: the AFSCME is a subsidiary of a parent union; another union representing County employees, the Civil Service Employees Association ("CSEA"), is a sister union of the AFSCME; the CSEA did endorse Grant; because the CSEA is sister union of the AFSCME, the CSEA's endorsement can be attributed to the AFSCME. This point seems overly technical to have affected Grant's actions one

way or the other, and does not support the plaintiffs' claim.

The plaintiffs also seek to use the CSEA's endorsement to support their position on another point. The plaintiffs suggest that it was because the CSEA endorsed Grant that the CSEA was able to obtain a contract from the County. From this premise, they argue that those unions which endorsed Grant were treated well, while those unions which did not endorse Grant, such as the plaintiff Association, were not treated well. However, the fact that the CSEA has a contract, does not, alone, indicate that the CSEA was treated better than the plaintiffs. To the contrary, there is every indication that the County's negotiations with the CSEA, which lasted 19 months, were just as bitter as the current negotiations with the plaintiffs. Indeed, during the CSEA negotiations the press published a quote from the president of the CSEA, in which she expressed surprise at the fact that Grant's loyalty to the CSEA was "nil," notwithstanding that the union had "always been friendly to Mr. Grant." The acrimony present during the County's negotiations with the CSEA strongly suggests that neither the CSEA's endorsement nor its "substantial contributions" [2] had any bearing whatsoever on the County's negotiations with that union.

Other evidence also discredits the plaintiffs' claim. First of all, although the plaintiffs did not endorse Grant, neither did they endorse his opponent. Moreover, the Rockland County Patrolmen's Benevolent Association, Inc., with which the plaintiff Association is currently affiliated, in fact did endorse Grant, and the New York Federation of Police, with which the Association was formerly associated, also endorsed Grant.[3] Furthermore, the plaintiffs do not contest Grant's statement that he does not believe that the local deputies ever endorse on their own, but only through umbrella organizations such as those indicated above. In light of these facts, it seems manifestly unreasonable to suppose that the defendants are retaliating for the plaintiff Association's lack of endorsement.

Finally, the defendants argue that the reason that the negotiations have been so difficult is not because of any retaliatory motive, but rather because Grant wants to limit raises for County employees to approximately 5 percent. This argument is supported by the fact that all of the unions which have obtained contracts from the County have obtained raises of between 5 and 7 percent. In contrast, however, the plaintiff association is seeking a raise of 8 to 12 percent.[4] In his affidavit in opposition to the summary judgment motion, Mr. Kruse acknowledges that the plaintiffs are seeking one of the highest settlements, Affidavit of Raymond G. Kruse at 9, but explains that "the Plaintiff Association has usually settled substantially outside of the so-called County 'pattern' and the justification for its doing so has been long established." *Id.* at 11. However, just what this "long-established justification" is has not been explained, either in Kruse's affidavit or in any other of the plaintiffs' supporting papers. Nor were the plaintiffs able to offer an explanation when asked to do so at oral argument.

For all of the reasons discussed above, we find that there is no genuine issue as to whether the defendants' actions during the negotiations with the plaintiff Association have been taken in retaliation for the Asso-

---

**2.** According to the Affidavit of Raymond Kruse, submitted in opposition to the defendants' motion for summary judgment, Grant received both an endorsement from the CSEA and substantial contributions from its political action committee.

**3.** The defendants refer to these organizations as the current and former parent, respectively, of the plaintiff Association. The plaintiffs vigorously contest this characterization of the relationship between the organizations and the plaintiff Association, but do not contest that at least they are, or were, affiliated. The plaintiffs explain that these umbrella organizations provide attorney and negotiation services for member associations such as the plaintiff Association, but do not otherwise clarify the nature of the affiliation.

**4.** The plaintiffs suggest that raises for Grant's office staff approximated 25 percent per person. This figure is derived from mathematical manipulation of the first magnitude, and does not merit discussion.

**570**

ciation's failure to endorse Grant. The plaintiffs have failed to show that any such retaliatory motive existed, much less that any such motive was a substantial factor in the defendants' actions. Having failed to show that such a motive was at least a substantial factor behind the defendants' negotiations, the plaintiffs do not state a cause of action under section 1983. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

### b. Attorneys' Fees

■ Under 42 U.S.C. § 1988 (1982) the Court may, in its discretion, award a reasonable attorney's fee to the prevailing party in a section 1983 action. Such an award is appropriate here.

■ Notwithstanding its section 1983 label, this case is grounded in an everyday labor-employer bargaining dispute, and we indicated as much in our prior decision. It does not belong in Court. By pursuing it, the plaintiffs have required other litigants, who have a genuine need for the services of this Court, to stand aside for the benefit of the plaintiffs' negotiating position. Where a federal court is used as a means of gaining leverage in a labor dispute, an award of attorneys' fees is appropriate, and the defendants' motion for such fees is granted. The exact award will be determined after the defendants provide proof of the amount of their attorneys' fees.

We do not, however, award sanctions or costs.

SO ORDERED.