**INTERNATIONAL BUSINESS MACHINES CORPORATION,**
Plaintiff,

v.

**NASHUA CORPORATION, Defendant.**

**No. 86 Civ. 2796 (GLG).**

United States District Court,
S.D. New York.

March 15, 1988.

Cravath, Swaine & Moore, New York City, Alan J. Hruska, of counsel, for plaintiff.

Lahive & Cockfield, Boston, Mass., James E. Cockfield, William C. Geary III, of counsel; Hopgood, Calimafde, Kalil Blaustein & Judlowe, New York City, Paul T. Meiklejohn, Paul Blaustein, of counsel, for defendant.

## OPINION

GOETTEL, District Judge:

This is a contract action to recover royalties allegedly owed by the defendant, Nashua Corporation, to the plaintiff, International Business Machines Corporation, under a patent licensing agreement dated September 1, 1971. Under that agreement, IBM granted Nashua a nonexclusive license to practice a defined set of patents, including the one at issue here, United States Letters Patent No. 3,668,658, issued on June 6, 1972 (the "Flores" patent). The Flores patent covers the flexible magnetic recording disk commonly known in the computer industry as the "floppy disk."[1] In return for any use it made of the patents covered by the agreement, Nashua agreed to pay royalties on a semiannual basis.

IBM claims that for more than six years Nashua has been using the Flores patent without paying royalties therefor. Nashua has not disputed that under the agreement it has an obligation to pay for any use it makes of the Flores patent. However, Nashua argues that it has not made any such use because, it claims, it manufactures its floppy disk in a fashion that does not involve the patent.

The plaintiff has moved for summary judgment on the issue of liability. For the reasons discussed below, the motion is granted.

## BACKGROUND

The floppy disk covered by the patent is constructed of a circular magnetic recording disk contained within a hard, square, protective cover. All edges of the cover are sealed, so that the disk cannot be removed therefrom. To either side of the disk, between it and the hard cover, is a liner. These liners are the focus of the dispute at bar. The purpose of these liners is to wipe the disk clean as it rotates within the stationary cover. In order to accomplish this purpose, the liners obviously must be in contact with the disk as it rotates. The problem presented by this necessary contact between the disk and the liners is that it produces friction, which in turn converts to static electricity.

Static is undesirable for several reasons. For example, it can "spark off" data from the disk. Second, static can attract dust, which consequence can defeat the very pur-

---

1. The patent is owned by IBM by assignment from the named inventors, Ralph Flores and Herbert E. Thompson.

pose of the liners. Finally, static can cause the disk to stick to the liners, which is problematic in several respects. Most important, this sticking will cause the disk to rotate unevenly. This is a problem because the proper interaction between the disk and the computer depends on precise time synchronization, and that synchronization will be disrupted by the uneven rotation of the disk. Moreover, the clinging obviously will increase friction, thereby increasing static and worsening the problems consequent thereto.

In light of these problems, it is desirable to reduce the necessary contact between the liners and the disk to the lowest degree which will still allow the liners to clean the disk, and then to dissipate the static produced by the friction from that necessary contact. The liner described in the patent achieves these objectives because it is made of a low-friction material which has antistatic properties.[2]

Against this background, IBM alleges that Nashua has manufactured floppy disks within the first claim of the Flores patent, and has not paid royalties therefor, in contravention of the licensing agreement between the parties. The first claim of the patent reads as follows:

> In a magnetic recording system, the combination comprising:
>
> a rotary magnetic record disk; and
>
> a cover for containing said disk, having the inner surfaces thereof in physical and frictional contract with the adjacent record surfaces of said disk,
>
> said inner surfaces being a solid, porous, antistatic cleaning material,
>
> said cover having a transducing aperture to expose a portion of said rotary magnetic record disk,
>
> said disk being rotatable while said cover is maintained stationary in the magnetic recording system,
>
> whereby said solid, porous material cleans contaminants from said record disk during rotation of said record disk.

Nashua denies that it has manufactured floppy disks within this claim. Specifically, Nashua denies that its product uses the third element of this claim.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden is on the moving party to show the absence of a material, factual dispute. Fed.R.Civ.P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Most facts are not in controversy. Nashua has a license and is producing a product along the lines of the patent's process. However, Nashua maintains that one element of the claim in question is absent in its product.

Nashua's arguments are directed to the third element of the first claim of the patent. That element describes the liner contained in the patented item as "a solid, porous, antistatic cleaning material." Nashua does not dispute that its liner is solid and porous. Rather, its arguments are directed to the antistatic property of the patented item's liner.

Nashua's first, and strongest, argument that it is not using the third element of the first claim of the patent is comprised of two interrelated parts. First, Nashua suggests that the patent protects only one function of the antistatic property of the liner. Nashua then claims that its product achieves that function in a manner other than by use of the antistatic property of its liner. Based on these interrelated arguments, Nashua claims that it is not using the Flores patent. We will address these two interrelated points in turn.

■ The first part of Nashua's argument is that although several benefits may flow from the liner's antistatic properties, *e.g.*, preventing the sparking off of data and the attraction of dust, only one is protected by the patent. Nashua claims that

2. A material can be inherently anti-static, such as rayon, or it can be made antistatic by treating it with antistatic chemicals, such as fatty ester.

the only protected benefit of the liner's antistatic property lies in its function in preventing the static charge, which will arise from the friction of the liner's contact with the disk, from causing the disk to cling to the liner, and thereby from interfering with the normally low frictional relationship between them. The basis for Nashua's argument that only this benefit of the liner's antistatic property, and no other, has patent protection, is one sentence in the specification sentence of the letters patent. That sentence reads as follows:

> The [solid, porous, antistatic cleaning] material allows the disk to be easily rotatable within the cover since the antistatic property prevents electrostatic charge that could be present on the sheets from adversely effecting [sic] the normally low frictional relationship between the material and the disk.

For purposes of the instant motion, we will accept Nashua's construction of this language.[3]

Nashua then explains that its liner achieves this benefit by a means other than the antistatic property of its liner, as follows. Nashua's liner is anchored to the hard cover of its disk at several points in such a way as to create a "pillowing" effect. This pillowing of the liner, Nashua advises us, reduces the friction between the liner and the disk. Therefore, Nashua reasons, it is this pillowing of its liner, rather than its liner's antistatic property, which is responsible for causing the low frictional relationship between it and the disk.

Even accepting this as true, it does not support Nashua's claim that a means other than the antistatic property of its liner is effecting the benefit described in the specification sentence. The *creation* of a low-frictional relationship between the liner and the disk is not what the specification sentence is describing as the benefit of the antistatic property of the liner. That sentence contemplates that a low-frictional relationship already exists between the liner and the disk. What the specification sentence describes as the benefit of the liner's antistatic property is its function in *maintaining* an already-existing low-frictional relationship.

The antistatic property maintains the low-friction relationship by virtue of the fact that it dissipates the charge that builds up from the (low) friction. If not dissipated, that charge would cause the disk and the liner to cling together. As explained above, this clinging would interfere with the even rotation of the disk and would increase friction. Therefore, the antistatic property of the liner maintains the low frictional relationship by preventing static buildup and thereby preventing clinging which would increase the friction present.

Nashua makes no claim that the pillowing of its liner plays any role in dissipating the static which its product's admittedly low degree of friction will nevertheless produce. Therefore although the pillowing may be responsible for the fact that the friction between its liner and disk is initially low, the pillowing is not responsible for preventing the static consequent to that friction from adversely affecting that initially low frictional relationship. In other words, although the pillowing may be responsible for initially creating a low frictional relationship between the liner and the disk, it is not responsible for maintaining that relationship. The pillowing there-

---

3. IBM disputes Nashua's argument that this language restricts the scope of the protection afforded by the patent. According to IBM, this language merely explains one of the functions of the antistatic property of the liner, and does not narrow the claim to exclude other benefits flowing from that property.

Nashua vociferously argues that the resolution of this dispute depends on factual issues and that summary judgment is therefore inappropriate at this time. Indeed its papers submitted in opposition to IBM's motion were almost exclusively devoted to that point. We disagree, because we find that the dispute is not material. Our disposition of the motion is the same whether we accept IBM's or Nashua's position. In any event, on a motion for summary judgment we are bound to draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Therefore, for the purposes of this motion, we will accept Nashua's construction of the language in dispute.

fore does not achieve the benefit of the antistatic property of the liner which is described in the specification.

Nashua makes two further arguments against IBM's claim that Nashua is using the Flores patent. The first of these is that any antistatic property which Nashua's liner might have is irrelevant to the issue at bar, because its disk does not produce any static to be dissipated. The reason its product does not produce static, Nashua claims, is that there is no contact at all between its liner and disk. Well now, here *is* a mystery. For if there is no contact between them, then what on earth is cleaning the disk? Why, the very air, Nashua advised us at oral argument. Of course this response raises another question: if the liner is not included in Nashua's product for the purpose of cleaning the disk, then why is it included? Nashua has never answered this question.[4]

"Although it is not for the Court, on [a motion for summary judgment], to resolve disputed issues of fact, nevertheless it is within the Court's province to decide whether the issue raised are genuine or whether they constitute mere speculation or conjecture." *Rockland County Sheriff's Deputies Association, Inc. v. Grant,* 670 F.Supp. 566, 568 (S.D.N.Y.1987) (Goettel, J.). We find that Nashua's second argument fails to raise a genuine triable issue over whether there is contact between its liner and its disk. Accordingly, we also find that the argument fails to raise a genuine issue over whether Nashua's product does or does not produce static. Our reasons do not require much discussion. First of all, the proposition is inherently improbable. This is confirmed by the Nashua's failure to substantiate its implausible answers to the questions raised by the proposition. Moreover, Nashua itself retreated from the proposition in the papers

it submitted following oral argument. In his supplemental affidavit, Nashua's expert Peter O. Hutchinson made it clear that indeed there was contact between the liner and the disk. In the fourth paragraph of his affidavit, he speaks of Nashua's product's "unique mode of surface contact between the liner material and disk." His affidavit also discusses the function of the "surface lubricant on the disk", which lubricant would of course be unnecessary but for the contact between the liner and the disk. All these circumstances lead us to conclude that Nashua's fanciful second argument constitutes nothing more than supposition or surmise, which will not defeat a motion for summary judgment. *Knight v. U.S. Fire Insurance Company,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Nashua's third, and weakest, argument is that Nashua's liner material does not have antistatic properties at all.[5] But the fact that its liner material in fact is antistatic is not genuinely in dispute. The basis on which Nashua makes this third argument is the fact that its liner material has not been treated with an antistatic chemical. However, as Nashua knows full well, a material can be inherently antistatic, so that application of an antistatic chemical is not necessary to give the material an antistatic property. Nashua makes no claim that its material is not inherently antistatic, and it conclusively appears that it is. Aside from IBM's proof on this subject, Nashua's supplier of liner material, the Hollingsworth & Vose Company, states in its specification sheet on the material that the material has inherent antistatic properties.

CONCLUSION

For the reasons discussed above, the motion for summary judgment is granted. If the parties cannot agree on the amount of

---

**4.** Another obvious question is why, if it is true that the air rather than the liner cleans Nashua's disk, did Nashua not raise this point as its principal argument against IBM's claim of patent use? It is abundantly clear that the patent claim at issue claims a product with a liner whose purpose is to wipe clean the disk. We do not pursue this inquiry because we reject the proposition that air, rather than the liner, is

responsible for cleaning the disk in Nashua's product.

**5.** We wish to note that the Supplemental Affidavit of Peter O. Hutchinson, which Nashua offers to support this contention, is a masterpiece of obfuscation.

royalties owing, the matter will be referred to a magistrate for an inquest. The plaintiff will advise the Court within 30 days if a reference is necessary. Otherwise it will enter judgment.

SO ORDERED.