

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-2004

# Muti v. Schmidt

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1206

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Muti v. Schmidt" (2004). *2004 Decisions.* Paper 30.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/30

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1206
_____

RICHARD S. MUTI,

Appellant

v.

WILLIAM H. SCHMIDT, Individually and in
his Official Capacity as BERGEN COUNTY
PROSECUTOR; COUNTY OF BERGEN; WILLIAM P.
SCHUBER, Individually and in his Official
Capacity as BERGEN COUNTY EXECUTIVE; JOHN
AND JANE DOES 1-10, Individually and in
their Official Capacities

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-03865)
District Judge:  The Honorable William H. Walls

_____

ARGUED DECEMBER 14, 2004

Before: NYGAARD, ROSENN, and BECKER, <u>Circuit</u> <u>Judges</u>.

(Filed December 29, 2004)

Richard S. Muti (Argued)
66 Church Street
Ramsey, NJ 07446


<u>Pro Se Appellant</u>

Michael S. Stein, Esq. (Argued)
Pashman Stein
21 Main Street
Court Plaza South
Hackensack, NJ 07601-7054

      Counsel for Appellees

_____

OPINION OF THE COURT
_____


NYGAARD, Circuit Judge.

Richard Muti appeals from a final order of the District Court dismissing his complaint for failure to state a claim. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

I.

On July 10, 1995, Acting Bergen County Prosecutor Charles Buckley hired Muti as an Assistant Prosecutor with the Bergen County Prosecutor's Office ("BCPO"). William Schmidt became Prosecutor on March 10, 1997. At some point in June of that year, Schmidt promoted Muti to be one of three Deputy First Assistant Prosecutors. Despite this promotion, the two men apparently had a strained relationship, due at least in part to a series of disagreements concerning Schmidt's management of the BCPO. Nonetheless, in his capacity as Deputy First Assistant, Muti: served as Chief Financial Officer of the BCPO; had responsibility over preparation and management of the BCPO's budget; had authority over the disbursement of federal forfeiture funds; made regular

2

staffing level recommendations to Schmidt; provided Schmidt with legal opinions and memoranda regarding personnel decisions; and acted as the BCPO chief negotiator for leases and the renewal of police union contracts.

In August 2000, Schmidt proposed that the county use bonds and federal forfeiture funds to purchase a new BCPO building. In response to Schmidt's proposal, on August 14, 2000, Muti sent a letter on BCPO letterhead to the Bergen County Executive, the Board of Chosen Freeholders, the County Administrator, County Counsel, the County Treasurer, and to Schmidt himself. In the letter, Muti questioned the prudence of Schmidt's decision to purchase the building, calling it "a significant waste of public resources." (App. at 69). He explained, "I have no doubt that Prosecutor Schmidt is sincere in his belief that the BCPO needs the building, but I am convinced that we do not." (Id.). Muti also expressed his opinion that there existed "a palpable sense of fear among senior staff members to voice even the slightest disagreement with our boss." (Id.). Schmidt received his copy of the letter that day, and promptly fired Muti.

Muti brought suit, claiming his termination violated a variety of federal and state laws. Presently on appeal is his claim under 42 U.S.C. § 1983 and the First and Fourteenth Amendments, in which he asserts that he was fired in retaliation for his exercise of the right to free speech. Pursuant to motion, the District Court dismissed that claim on January 3, 2003.

II.

Although we evaluate a public employee's claim of retaliatory termination for engaging in protected speech under a three-step test, *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001), the first is dispositive here. Under this step, Muti must establish as a threshold that his speech regarded a matter of public concern. *Id*. at 195. Schmidt concedes this threshold has been met, and indeed it has. As part of this step, we must next balance Muti's interest in the speech against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citation omitted). In making this determination, no single factor is dispositive; each must be weighed. *Baldassare*, 250 F.3d at 198. On the employee's side, the public has an "especially powerful" interest in exposing potential wrongdoing by public officials. *Id*. As for the public employer, we must consider "whether the [expression] impairs discipline by superiors or . . . *has a detrimental effect on close working relationships for which personal loyalty and confidence are necessary*, or . . . interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388 (emphasis added). In weighing the extent of the detrimental impact on a close working relationship, the proximity within the organizational hierarchy between the employer and the employee is particularly important. *Baldassare*, 250 F.3d at 198 (citations omitted). The burden of justifying the discharge ultimately lies with the State. *Rankin*, 483 U.S. at 388.

4

In the August 14th letter, Muti publicly expressed disagreement with Schmidt's decision to seek purchase of a new building. Muti noted that while he believed Schmidt's choice to be a sincere one, he questioned its prudence, characterizing it as "a significant waste of public resources." Furthermore, and significantly, Muti questioned Schmidt's receptiveness to dissenting opinions. Although Muti, as a public employee, does have an especially powerful interest in exposing potential wrongdoing, the August 14th letter does not particularly further that interest. Instead, the letter essentially concerns a difference of opinion as to a policy choice: whether the BCPO should purchase a new building. Had the letter alleged corruption or serious misconduct, Muti's interests would weigh more heavily; but as the letter merely expresses disagreement with a policy choice by Schmidt—a choice he characterizes as "sincere"—it equates to little more than a public airing of grievances and an act of insubordination.

By contrast, the detrimental impact on the working relationship between Muti and Schmidt was somewhat significant. Although Muti portrays his role in the BCPO as that of an outsider, serving a largely ministerial function, it appears he had a good deal of responsibility over budgetary and staffing matters, much of which required him to report to Schmidt. Thus, although the two were undoubtedly not close in the sense of amicability, they were close in the sense that Schmidt had to depend on Muti's loyalty and confidence. At the very least, Muti's role as an advisor to Schmidt on personnel decisions, and as a contract negotiator for the BCPO, required Schmidt to trust and rely

5

on Muti. *Cf. Baldassare*, 250 F.3d at 198 ("In calibrating the significance of the disruption, the relationship between the employer and the employee is particularly important."). By publicly criticizing Schmidt's policy choice and the atmosphere in the office, Muti undermined that trust. It seems unlikely that Schmidt would be unable to rely on his advisors if he feared that every decision he made as Prosecutor would be publicly chided by subordinates who disagree with him. On balance, therefore, Muti's interest in exposing what he deemed to be an improvident use of public funds, does not outweigh Schmidt's interest in having trusted advisors. Accordingly, his free speech claim must fail.[1]

III.

---

[1] Muti also argues that his termination was based, in part, on four earlier instances of protected speech activity, consisting primarily of memos written to Schmidt regarding personnel and budgetary issues. To succeed on this additional claim, Muti must "show the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Mt. Healthy City Sch. Bd. v. Doyle*, 429 U.S. 274, 287 (1977). If he can do so, Schmidt, as employer, can rebut the claim by demonstrating he "'would have reached the same decision . . . even in the absence of the protected conduct.'" *Baldassare*, 250 F.3d at 195 (quoting *Doyle*, 429 U.S. at 287). Typically, this is a fact-based inquiry not appropriate for resolution upon a motion to dismiss. *See Baldassare*, 250 F.3d at 195. Nevertheless, we agree with the District Court that we can dismiss Muti's claim as a matter of law because the detailed factual allegations in the complaint demonstrate that his previous speech activity was not a substantial or motivating factor in his termination.

As Muti has failed to state a claim upon which relief may be granted, we affirm the order of the District Court dismissing his free speech claim.[2]

---

[2] As there are no redressable federal claims remaining, the District Court appropriately declined to exercise its supplemental jurisdiction over Muti's state-law claims. *See* 28 U.S.C. § 1367.