

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-6-2008

# Mincy v. Klem

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1661

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Mincy v. Klem" (2008). *2008 Decisions.* Paper 1263.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1263

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1661
_____

HILTON MINCY

Appellant,

v.

EDWARD J. KLEM, Superintendent of State Correctional Institution Mahanoy;
LIEUTENANT S. DATCHKO, Hearing Examiner; J.K. KANE; CHIEF HEARING
EXAMINER ROBERT BITNER; UNIT MANAGER MARTIN WILLIAMS; UNIT
MANAGER RICHARD SPAIDE; DRUG AND ALCOHOL SUPERVISOR BERNARD
CUDWADIE; REGISTERED NURSE S. WASLOSKI; OFFICER L.H. ROBINSON;
OFFICER P. FARBER; JOSEPH NEVIS; SHARON M. BURKS; JOAN E. HOLDEN
and JANE DOE
_____

No. 07-1907
_____

HILTON MINCY
Appellant,

v.

KENNETH G. CHMIELEWSKI, individually and in his capacity as Deputy
Superintendent for Specialized Services of State Correctional Institution Mahanoy;
CAPTAIN MOONEY; LIEUTENANT GAVIN, individually and in their capacities as
institutional security officers for S.C.I.; J.K. LANE, individually and in his capacity as a
Hearing Examiner and employee of the Pennsylvania Dep't of Corrections; DR.
MODERY, individually and in her capacity as an employee of the Pennsylvania Dep't of
Corrections; PHYSICIAN'S ASSISTANT JOE RUSH, individually and in his capacity as
an employee of the Pennsylvania Dep't of Corrections; PSYCHIATRIST AHNER;
PSYCHOLOGIST KRAMER, individually and in their capacities as employees of the
Pennsylvania Dep't of Corrections; SGT. JOFFE; OFFICER KEHOE; OFFICER

EVERDING, individually and in their capacities as employees of the Pennsylvania Dep't of Corrections; OFFICER CLARK; OFFICER RENNINGER; OFFICER BREINER; OFFICER MORGAN; OFFICER VANCE; OFFICER MURPHY; OFFICER LAPATOVICH; OFFICER GOWER; OFFICER LOWE; OFFICER AVALLENO; OFFICER DERFLER, individually and in their capacities as correctional officers for the Pennsylvania Dep't of Corrections; LIEUTENANT KAUFFMANN; LIEUTENANT RUTEKI, individually and in their capacities as correctional officers for the Pennsylvania Dep't of Corrections; EDWARD J. KLEM; ROBERT S. BITNER

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Nos. 05-cv-1458; 05-cv-0292)
District Judge: Hon. Christopher C. Conner

Submitted Under Third Circuit LAR 34.1(a)
March 13, 2008

Before: FUENTES, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

_____

(Filed: May 6, 2008)

OPINION OF THE COURT

CHAGARES, Circuit Judge.

In this consolidated appeal of two separate civil rights actions, Hilton Mincy contends that the District Court erred by granting summary judgment to the defendants, all of whom work for the Pennsylvania Department of Corrections (DOC) in various capacities (hereinafter collectively referred to as Defendants). Although Mincy, an inmate at SCI-Mahanoy, initially sought relief pursuant to a host of alleged constitutional violations, he presses here only one claim: that DOC unlawfully retaliated against him for exercising his First Amendment rights. We will affirm the District Court's grants of

2

summary judgment.

I.

On November 10, 2004, Mincy's cellmate had an altercation with an Officer Kehoe. Three days later, Mincy was interviewed as part of the investigation into the altercation. On November 23, 2004, prison administrators decided to move Mincy upon Kehoe's return to work so that he would not have to interact with Kehoe further. Mincy filed a grievance that day (Number 102459) charging that DOC moved him in retaliation for his testimony. This grievance was heard, and denied, with the hearing officer concluding that the move was made to advance institutional security. Mincy's appeal of this denial failed.

On November 27, 2004, after being moved, Mincy was charged with a misconduct for refusing to obey an order and for refusing to stand count, and a hearing officer sanctioned him to 54 days in the Restricted Housing Unit (RHU). Mincy unsuccessfully appealed this misconduct through all levels of review.

On December 1, 2004, Mincy was admitted to the infirmary for psychiatric observation because he had begun a "hunger strike." He claimed that his hunger strike aimed to protest DOC's denial of certain basic toiletry items to him in the RHU. All inmates who refuse to eat or drink are sent to the infirmary and are kept in a Psychiatric Observation Cell (POC). After being examined by a psychologist, being counseled, and signing a form regarding the effects of malnourishment, Mincy assured the staff that he

3

would eat.  He thereafter ate all his meals while in the infirmary, and was discharged the next day.  He did, however, file a second grievance (Number 103968) based on the lack of toiletries.  After a hearing, the hearing examiner found that Mincy had been issued the toiletries, just like all other inmates in the RHU.  Mincy's appeal of this decision failed.

The three incidents detailed above formed the majority of the basis for Mincy v. Chmielewski, Civ. A. No. 05-292.

On April 3, 2005, while still in the RHU, Mincy claimed to have found "pebbles" in his food.  On April 11, 2005, he filed a third grievance (Number 114795), asserting that DOC officers that he named in Chmielewski were responsible for giving his meal this lithic twist.  As part of the investigation into this grievance, Lieutenant Datchko interviewed Mincy, and ordered an investigative search of Mincy's cell to determine if the rocks came from inside Mincy's cell.  While no pebbles were found in the cell, officials did find unauthorized pills and an unauthorized "transport device" (essentially a long string with an altered toothpaste container at the end of it, to facilitate intra-cell communication by inmates).  Mincy was charged with a misconduct for possession of this contraband.  Hearing Examiner Kane held a hearing regarding the misconduct, at which Mincy alleged that the cell search was in retaliation for previous grievances filed against the prison.  Kane considered both Mincy's oral and written testimony and oral testimony from the officer who conducted the search and authored the misconduct charge, and ultimately decided that because it was undisputed that Mincy did not have a prescription

4

for the pills, the pills were contraband, and the "transport device" was also contraband. Therefore, Kane found Mincy guilty of the charges in the misconduct, and sentenced Mincy to 60 days of disciplinary custody. Mincy's administrative appeals failed. The "pebble incident" formed the basis for Mincy v. Klem, Civ. A. No. 05-1458.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. When reviewing an order granting summary judgment, "[w]e exercise plenary review . . . and we apply the same standard that the lower court should have applied." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Farrell, 206 F.3d at 278. "There must, however, be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive

5

law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).

## III.

Section 1983 provides a cause of action for constitutional violations by state officials. See 42 U.S.C. § 1983. To succeed on a First Amendment retaliation claim, an inmate plaintiff must prove that: (1) "the conduct which led to the alleged retaliation was constitutionally protected," Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); (2) the inmate "suffered some adverse action at the hands of the prison officials," which requires demonstration that the adverse action "was sufficient to deter a person of ordinary firmness from exercising his constitutional rights," id. (quotation marks omitted); and (3) there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Id. Our Court has incorporated the burden-shifting framework first set forth in Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977), into the prison context. Accordingly, to show a causal link, the prisoner plaintiff bears "the initial burden of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333 (quoting Mount Healthy, 429 U.S. at 287). If he does so, the "burden then shift[s] to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Id.

The District Court granted summary judgment properly in Chmielewski. Assuming, arguendo, that Mincy could satisfy the first and second prongs of the Rauser

6

test, his claims nevertheless fail pursuant to the Mount Healthy burden-shifting test.

Defendants have presented evidence, from depositions and documentary sources, that

"they would have made the same decision absent the protected conduct for reasons

reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Defendants have shown that legitimate penological interests, not retaliation, caused each

action Mincy challenges. First, DOC made the initial decision to move Mincy to reduce

the possibility of conflict between Mincy and Officer Kehoe. Proactively reducing

tensions between guards and inmates is, of course, a legitimate goal for prison

administrators. Second, refusing orders, including refusing to stand count, is typically

punishable by time in the RHU. Such a policy is essential to advance the legitimate

penological interest in an orderly facility. Third, institutional policy requires all inmates

refusing to eat or drink to be placed in the POC for their own safety. As the District

Court noted, "[t]he psychiatric observation was a patently appropriate response taken

pursuant to a well-reasoned institutional policy." Chmielewski, Civ. A. No. 05-292, 2007

WL 707344, at *8 (M.D. Pa. Mar. 2, 2007). Finally, the record indicates that all inmates

entering the RHU are issued an "initial issue" toiletry bag, pre-packed by inmate workers,

and Mincy has not presented any evidence to the contrary.

The same analysis demonstrates that the District Court was also correct to grant

summary judgment to Defendants in Klem. We will again assume that Mincy can make

out a prima facie case of retaliation regarding the investigatory search of his cell and the

7

issuance of the misconduct. Mincy's claim fails nonetheless. Once Mincy filed grievance Number 114795, prison officials investigated Mincy's claims – pursuant to the "legitimate penological interest" in resolving Mincy's grievance. Rauser, 241 F.3d at 334. Indeed, the administrative cell search was precisely the type of action that would have been taken "absent [Mincy's] protected conduct," as Defendants were responding to a claim made by Mincy himself.

The record demonstrates that it would be extremely difficult to put anything in food trays delivered to the RHU because the kitchen staff, after preparing the trays, seals them and places them into a locked cart. The trays are not opened until received by the inmates. Given this procedure, it was a perfectly reasonable measure for Lieutenant Datchko to order an administrative search of Mincy's RHU cell to determine if the pebbles could possibly have come from inside the cell. The record shows that the officers who conducted the search were instructed specifically to search the cell for pebbles or rocks of any kind, and Mincy presents no evidence that the cell search was motivated improperly. Once the officers discovered the pills and the "transport device," they issued Mincy a misconduct, pursuant to the legitimate interest in deterring possession of contraband.

Finally, Mincy claims that certain Defendants, involved in the adjudication of his misconduct appeals, acted with retaliatory animus in denying those appeals because he had named them as defendants in Chmielewski. This claim fails for the simple reason

8

that none of these defendants knew they had been named in <u>Chmielewski</u> at the time Mincy appealed his misconduct. The record reveals that the misconduct was issued and adjudicated in April 2005, but the <u>Chmielewski</u> complaint was not served upon any Defendant until August 2005.

IV.

For the foregoing reasons, we will affirm the District Court's decisions in all respects.